## Richmond

WATERS, EXECUTOR V. TREFOURET, *dite* HARDING AND
OTHERS.

January 12, 1915.

Absent, Keith, P.

1. WILLS—*Construction—Irreconcilable Provisions—When Last Will
Prevail—Intention of Testator.*—The rule that when two pro-
visions of a will are irreconcilable the latter must prevail is
only applied in those cases where the intention of the testa-
tor cannot be discovered, and when the two provisions are so
totally inconsistent that it is impossible for them to coincide
with each other or with the general intention of the testator.
The great and leading principle in the construction of wills
is that the intention of the testator, if not inconsistent with
the rules of law, shall govern, and that intent must be ascer-
tained from the whole will taken together; and no part
thereof to which meaning and operation can be given con-
sistent with the general intention of the testator shall be re-
jected. When the words of one part of a will are capable of
a twofold construction, that should be adopted which is most
consistent with the intention of the testator as ascertained
by other provisions in the will.

2. WILLS — *Construction — General Intent — Repugnant Clauses —
Case in Judgment.*—The general intention of a testator,
gathered from the whole will, must prevail over the rule that
of two repugnant clauses the last must prevail. In the case
in judgment, the general intent of the testatrix was to give
to each of two annuitants an annuity *during the whole of the
natural life* of each, and the gift over to her brothers, after
the death of her mother, was residuary in its character.

Appeal from a decree of the Circuit Court of Albemarle
county. Decree for the defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Perkins, Perkins & Walker,* for the appellant.

*Duke & Duke, Jay & Candler* and *Hanckel & Hanckel,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

In the year 1900, Sadie Palmer Waters, an unmarried woman, died, leaving her last will and testament, which was admitted to probate in the County Court of Albemarle county. The estate is estimated at $90,000, the principal of which is mainly invested in industrial securities.

By clause first of the will, testatrix's two brothers, William D. Waters and Frank A. Waters were appointed joint executors, but the latter declined to qualify, and died survived by his wife and children. William D. Waters qualified as executor and at the time of the death of his mother, Sarah G. Waters, on March 31, 1913, had fully discharged the debts, funeral expenses and other charges, including legacies, in accordance with the second and third clauses of the will.

As required by clause four, the executor has regularly paid the annuity of $2,000 to Alfredine Jeanne Trefouret, who is still living and unmarried. The trusts in relation to the orphanage referred to in that clause have terminated, with the exception of the annuity of $300 to Ida Jenny for life, which has also been paid up to the death of Mrs. Waters. Upon her death, William D. Waters, as executor and in his own right, filed his bill against the appellees for the construction of the fourth and last clause of the will, and asking the direction of the court in respect to the disposition to be made of the fund in his hands.

The will consists of four clauses, designated, respectively, "Clause First," "Clause Second," "Clause Third," and "Clause Fourth." "Clause Fourth," is as follows:

"All the rest, remainder and residue of my estate, whether real, personal or mixed, of whatever nature and wheresoever situate I give, devise and bequeath to my said Brothers Frank A. Waters and William D. Waters their survivor, successor or successors in fee simple, absolute in trust, however for the uses and purposes following, namely to receive, hold, manage and administer the same, to collect the rents, issues, profits and income thereof and after paying all taxes and other necessary and proper charges to pay to Alfredine Jeanne Trefouret dite Jane Hading of 9 Boulevard de la Saussaye, Neuilly, Paris, the Republic of France, the sum of two thousand dollars yearly during the whole of her natural life provided the said Jane Hading remains unmarried and should the said Jane Hading marry again I hereby direct that the said annuity shall thereupon cease to be paid to her. To pay to the directors or manager of my 'orphelinat' situated 32 rue de l'Yoette Omteuil, Paris, in the Republic of France, for the uses of said 'orphelinat' the sum of twelve hundred dollars *per annum* until the youngest child who shall be an inmate of the said 'orphelinat' at the time of my death shall have attained the age of seventeen years at which time I hereby direct that the said sum of $1200 *per annum* shall cease to be paid. But I further direct that at that time, viz when the youngest child who shall be an inmate of the said 'orphelinat' at the time of my death shall have attained the age of seventeen years my said trustees shall begin to pay and shall continue to pay to Mme. Ida Jenny, now the director of the said 'orphelinat' the sum of three hundred dollars *per annum*, and shall continue to pay the said sum to her during the whole of her natural life. I further direct that my said executors

pay the sum of one hundred dollars to each and every child who has been an inmate of my said 'orphelinat' upon her leaving the said 'orphelinat.' I direct that all the rest, residue and remainder of the income derived from my said estate shall be paid to my mother Sarah G. Waters during the term of her natural life and after her death I give, devise and bequeath unto my two brothers, Frank A. Waters and William D. Waters to their heirs and assigns forever in fee simple and without condition all of my estate then remaining in their hands, to each of my said brothers one equal half."

From a decree sustaining the right of Alfredine Jeanne Trefouret to receive the annuity bequeathed to her for life, unless she should marry again, and the right of Ida Jenny to receive the annuity bequeathed to her for life, the executor brings this appeal.

The controversy narrows itself down to the proposition, whether or not the language of clause fourth, "I direct that all the rest, residue and remainder of the income derived from my said estate shall be paid to my mother Sarah G. Waters during the term of her natural life and after her death I give, devise and bequeath unto my two brothers, Frank A. Waters and William D. Waters, to their heirs and assigns forever in fee simple and without condition all of my estate then remaining in their hands, to each of my said brothers one equal half thereof," revokes the annuities previously given in the same clause to Alfredine Jeanne Trefouret and Ida Jenny.

Appellant, to maintain his contention, invokes the rule of construction, that when two provisions in a will are irreconcilable the latter must prevail. This, however, is admittedly a rule of necessity and will only be adopted to avoid the failure of both provisions for uncertainty.

As was said by Chancellor Walworth in *Covenhaven* v. *Shuler*, 2 Paige (N. Y.) 122, 130, 21 Am. Dec. 73: "It is

only applied in those cases when the intention of the testator cannot be discovered, and when the two provisions are so totally inconsistent that it is impossible for them to coincide with each other, or with the general intention of the testator. The great and leading principle in the construction of wills is that the intention of the testator, if not inconsistent with the rules of law, shall govern, and that intent must be ascertained from the whole will taken together; and no part thereof to which meaning and operation can be given consistent with the general intention of the testator shall be rejected. When the words of one part of a will are capable of a twofold construction, that should be adopted which is most consistent with the intention of the testator as ascertained by other provisions in the will; and when the intention of the testator is incorrectly expressed, the court will effectuate it by supplying the proper words. The strict grammatical sense is not always regarded, but the words of the will may be transposed to make a limitation sensible, or to carry into effect the general intent."

These canons of construction were quoted with approval by this court and allowed controlling influence in the case of *Price* v. *Cole's Executrix*, 83 Va. 343, 2 S. E. 200, which was a stronger case for the application of the last clause doctrine than the case in judgment. Chancellor Walworth, at page 131 of 2 Paige (N. Y.) 21 Am. Dec. 73, characterizes the rule that the last provision in a will should prevail over an antecedent provision as evidencing the final intention of the testator, "as more fanciful than sound." Certain it is that the principle should not be suffered to dominate when from the entire instrument the intent of the testator can be discovered.

Thus in *Jesson* v. *Wright*, 2 Bligh's R. 56, Lord Redesdale says: "It cannot at this day be argued, that because the testator uses in one part of his will words having a clear

meaning in law, and in another part words inconsistent with the former, that the first words are to be cancelled or overthrown."

In *Price* v. *Cole's Executrix, supra,* testator divides his will into two sections. The first contains a specific devise to his nephew, and by the second section he gives to his sister "everything I die in possession of, as well as all the interest I hold in the world, embracing all the interest I hold in my mother's estate, as well as all the interest I may hold in any other way, free from the claims of all persons. I give her all debts that may be due me, and everything else real or mixed." The circuit court, applying the rule here invoked, gave effect alone to the last clause, but this court reversed the decree, and upheld the devise to the nephew, maintaining that the "General intention of testator, gathered from the whole will, must prevail over the rule that of two repugnant clauses the last must prevail."

Testing the will in controversy by the foregoing principles, it seems quite clear to us, that it was the general intent of the testatrix that her executor should hold the principal of her estate intact, and out of the income derived therefrom pay the annuities provided for to Alfredine Jeanne Trefouret and Ida Jenny, respectively, during *the whole of the natural life* of each annuitant (the annuity to the former subject only to be defeated *by her marriage*); and "that all the rest, residue and remainder of the income" should be paid to testatrix's mother, Sarah G. Waters, "during the term of her natural life." After the death of the mother, the will, in general terms, gives all the estate then remaining in the hands of testatrix's two brothers to them —to each one-half "in fee simple and without condition."

The gift to the brothers is *residuary in its character,* and construing clause fourth in its entirety, we do no violence to the language in holding that the brothers take the corpus of the estate, charged nevertheless with the annuities re-

ferred to.   It is apparent that in the preparation of the clause the two annuitants and testatrix's mother and brothers were continuously in her mind; and it is not possible that she intended to render inoperative at her mother's death annuities that she had deliberately declared should continue during *the whole of the natural life of each annuitant* by the subsequent residuary provision in favor of her two brothers, occurring in the same paragraph of the will. Such supposition would be irrational and wholly unjustifiable.

Without reviewing other authorities to which our attention has been drawn, we are of opinion that the decree of the circuit court is plainly right, and must be affirmed.

*Affirmed.*