# Richmond.

## W. C. NEBLETT, ET AL. v. CARY SMITH, ET ALS.

### May 28, 1925.

1. WILLS—*Presumption against Partial Intestacy.*—Partial intestacy is looked upon with disfavor. Wills are written for the purpose of disposing of property. There is a strong presumption that the testator intended to dispose of his entire estate, and courts are decidedly adverse to adopting any construction of a will which leaves a testator intestate as to any portion of his estate, unless compelled to do so.

2. WILLS—*Presumption against Partial Intestacy—Presumption that Testator Intended Property to Pass According to the Statute of Descents and Distributions.*—While there is a presumption that a testator intends to dispose of his entire estate, on the other hand, where an ambiguity exists in a will, unless there is a manifest intention to the contrary, the presumption is that the testator intended that his property should go in accordance with the law of descents and distributions.

3. WILLS—*Presumption against Partial Intestacy—Presumption that Testator Intended Property to Pass According to the Statute of Descents and Distributions—Case at Bar.*—The rule that an heir is not to be disinherited, except by express words or necessary implication, as among testator's collateral relatives or strangers, is of little or no weight as against the testator's apparent meaning, and, in the instant case, the presumption that testator intended his property should go in accordance with the statute of descents and distributions is weakened by the fact that there is a residuary clause which is entitled to a flexibility and breadth of construction that might not be proper in some antecedent paragraph, and by the further fact that each of his kin who are here complaining have, as a matter of fact, been remembered. In wills deliberately written, there are few testators whose settled purpose is to leave untouched a part of their estate and a residuary clause adds force to this rule.

4. WILLS—*Legacies and Devises—Legacy a Charge on the Personal Property.*—As a general rule the personal estate is not only the primary, but the only fund for the payment of legacies. It is equally a general rule that the real estate is not chargeable under the law with their payment, if the personal estate proves insufficient, unless the testator has charged the land with their payment. This he may do either in

express terms or by implication, but his intention to do so must be clear and manifest. And so in every case, whether the real estate is charged with the payment of legacies is a question of intention. The intention to charge must be either expressly declared, or be clearly deducible from the language and dispositions of the will.

5. WILLS—*"Estate"—Whether "Estate" Includes Real Property.*—The word "estate" is ordinarily a comprehensive expression including all things real and personal, though the context may show that no such broad definition was proper. The comprehensive definition should attach as a primary proposition and is not to be limited unless there is something in the instrument or in the circumstance in which it was written to indicate it was used in a different sense.

6. WILLS—*"Pay"—"To Be Paid"—Application of "Pay" to Real Property.*—"Pay" is not a word of unbending significance, although it has been held to mean a discharge in money of a sum due, and with the definition so limited it is no more accurate to speak of the payment of a legacy than it is to speak of a payment of a devise. A direction to pay is frequently but an order to transfer or to pass that in view to the party entitled. It is a common expression where bequests are ordered to be satisfied.

7. WILLS—*"Pay"—"To Be Paid"—Application of "Pay" to Real Property—"Estate"—Whether Residuary Clause Applies to Both Real and Personal Property—Case at Bar.*—In the instant case a residuary clause of a will directed that if there were "any remainder to the credit of my estate after payment of all the items mentioned and directed in my will, I direct them to pay such remainder" to a niece. Stress was laid upon the use of the word "pay" in this clause, and other clauses of the will, upon the use of the word "bequests," upon a direction to the executors to make final distribution, and in some instances to pay at "once," as indicating that the residuary clause did not apply to testatrix's real property.

   *Held:* That while all this was entitled to weight, yet considering the will as a whole, and the manner of its execution, testatrix intended to dispose of her entire estate and all bequests were general charges thereon.

8. WILLS—*Bequests—Gifts—"Devises."*—Bequests usually deal only with personal property, while gifts have a wider significance. The definitions of these words are not rigid. "Courts often construe the word 'bequest' to mean 'devise' and 'devise' to mean 'bequest.' "

Appeal from a decree of the Hustings Court, Part 2, of the city of Richmond. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*George E. Allen*, for the appellants.

*Charles T. Reekes, S. S. P. Patteson, A. B. Dickinson, Leake & Buford* and *McGuire, Riely & Eggleston*, for the appellees.

Holt, J., delivered the opinion of the court.

We are asked to construe the will of Mrs. Anna R. Wood. This will bears date May 31, 1912, and was prepared by Mr. Augustine Royall, a real estate agent of Richmond. To it are attached two codicils in the handwriting of the testatrix, one of date April 27, 1915, and one of date March 19, 1919. Mrs. Wood was a woman advanced in years and died on July 5, 1919. She had been twice married, the first time to S. L. Ingram and the second time to T. W. Wood, whom she survived. There were no children, her nearest relatives being two brothers and a sister and nieces and nephews, children of three dead brothers, together with a niece and namesake, named Anna E. Neblett, daughter of one of the living brothers, C. M. Neblett. Her relations with all of these kin were cordial and all of them were remembered. The will in judgment is as follows:

"In the name of God, Amen.

"I, Anna Elizabeth Wood, of 'Oakland,' Chesterfield county, in the State of Virginia, being of sound mind and disposing memory, do make this my last will and testament (hereby revoking all other wills heretofore made by me), in the manner and form following, to-wit:

"First: I will that out of my estate all of my just debts be paid.

"Second: I leave and give to my sister, Catherine L.

Matthews, ($2,000.00) two thousand dollars, to be paid out of my estate at once, or to her heirs.

"Third: I leave and give to my brother, Sidney L. Neblett, of Eagle Lake, Texas, ($2,000.00) two thousand dollars, to be paid out of my estate at once, or to his heirs.

"Fourth: I leave to my brother, Norman H. Neblett's, three children ($2,000.00) two thousand dollars, to be divided among them in this way: H. C. Neblett the sum of ($500.00) five hundred dollars, W. H. Neblett the sum of ($500.00) five hundred dollars and Elizabeth Green Neblett the sum of ($1,000.00) one thousand dollars, to be paid at once to them.

"Fifth: The sum of ($3,000.00) three thousand dollars I received from my first husband's estate, the late Dr. S. L. Ingram, I leave to his three sons, or their children, Judge John H. Ingram, Dr. Lawrence Ingram and Page W. Ingram.

"Sixth: I leave and give to Elsie P. Ingram, daughter of John H. Ingram, the sum of ($1,000.00) one thousand dollars, to pay her expenses abroad or to use as she deems best.

"Seventh: I leave and give to Clara M. Ingram five ($500.00) hundred dollars.

"Eighth: I leave and give to Anna P. Williams, of Greensboro, N. C., one hundred ($100.00) dollars.

"Ninth: I leave and give to Mrs. Lucy Dalton the sum of ($100.00) one hundred dollars.

"Tenth: I leave and give to Mrs. Sarah Dawson the sum of ($100.00) one hundred dollars.

"Eleventh: I leave and give to Frank W. Dawson the sum of ($100.00) one hundred dollars.

"Twelfth: I leave and give to my three brothers, C. M. Neblett, W. C. Neblett and W. E. Neblett, the sum of ($100.00) one hundred dollars each, and the bond

I hold against the latter, I wish returned to him, or their heirs.

"Thirteenth: I leave and give to Mrs. Kate B. Page the sum of ($100.00) one hundred dollars.

"Fourteenth: I give and bequeath to the trustees of the church of the Good Shepherd, Protestant Episcopal, situated at Forest Hill Park, in the county of Chesterfield, Virginia, the sum of ($1,000.00) one thousand dollars, to be used by them to the best interest of the said church.

"Fifteenth: I hereby direct my hereinafter named executors out of my estate to pay over to my dear friends, Mrs. S. J. Wilson and Miss C. P. Osborne, of No. 109 High street, Petersburg, Va., the sum of ($200.00) two hundred dollars each, if they be living, or if not, to be paid to Mrs. J. McClery.

"Sixteenth: I direct my hereinafter named executors out of my estate to pay over to the Right Rev. Bishop A. M. Randolph, Bishop of the Diocese of Virginia Protestant Episcopal Church, the sum of ($5,000.00, five thousand dollars, to create a fund, called the T. W) Wood Memorial Fund. The interest arising from said. fund to be used to educate some poor young man to preach the gospel, the said Bishop to make the selection of some suitable person. The above gift is to the said present Bishop, the said Right Rev. A. M. Randolph, or his successor in office. Sixteenth: I direct my hereinafter named executors to put a simple *toom* stone over my grave, costing not more than ($100.00) one hundred dollars. I want a suitable, but simple funeral without any pomp or show.

"Seventeenth: I direct my hereinafter named executors, after paying off the above gifts and bequests in the order named, should there be any residue of my estate, that they shall divide it equally between the Sheltering

Arms Hospital and the Home for Incurables, located in the city of Richmond, Va., and pay the same over to the proper constituted authorities of said institutions.

"Eighteenth: I hereby nominate and appoint my nephew, Herbert C. Neblett, and John Littlepage Ingram as executors of this my last will and testament.

"In testimony whereof I have hereunto put my hand and affixed my seal this 31st day of May, 1912.

"Anna E. Wood (Seal).

"Signed, sealed, declared and published by Anna E. Wood as her last will and testament in our presence, and attested by us in her presence at her request, and in the presence of each other.

"W. E. DuVal
"J. B. Hancock."

"In the fourth item of my will I gave to my nephews, H. C. and W. H. Neblett, the sum of ($500.00) five hundred dollars each, but I have, since making my will, endorsed a note of ($1,000.00) one thousand dollars for them which was discounted at Mechanics and Merchants Bank, Richmond, Va., for their benefit. If I or my executors have to pay the said note by reason of my endorsement I direct my said executors not to pay them the said sum of ($500.00) each mentioned in item four of this will—In the said fourth item of my will I direct my executors to pay to Elizabeth Green Neblett, now Elizabeth Green Torrence, the sum of ($1,000.00), but I have now decided to direct my said executors to pay said Elizabeth Green Torrence the sum of ($500.00) instead of ($1,000.00) as I before provided and direct my said executors to pay to my sister-in-law, Lillie H. Butler, the sum of $500.00.

"I direct my said executors to pay over to my namesake, Anna E. Neblett, daughter of Chas. M. Neblett, Greenwood, Lunenburg county, Va., the sum of $500.00,

and if there be any remainder to the credit of my estate after payment of all the items mentioned and directed in my will I direct them to. pay such remainder to my said namesake, Anna E. Neblett.

"This codicil to my will is written wholly in my own handwriting at Richmond, Va., the 27th day of April, 1915.

"Anna E. Wood."

"Codicil to this my last will.

"I desire to make a change in the executors named in the body of this will. I will and desire that my friend, Augustine Royall, be one of the executors of my will and to be in the place and stead of Herbert C. Neblett.

"So the executors will be Augustine Royall and John H. Ingram and that the court allow them to qualify as such without security.

"Witness my hand and seal this 19th day of March, 1919.

"Anna E. Wood (Seal)."

The personal estate which passed under it consisted of stock, notes, cash, etc., aggregating $25,564.50, jewelry valued at $990, silverware valued at $211.71, and furniture valued at $211.50. Putting aside for the present residuary provisions, the pecuniary bequests there enumerated amounted to $17,800.00, or should the estate have to pay the note mentioned in the first codicil, $16,800.00.

In addition the testatrix owned a house and lot in South Richmond and a small adjoining tract of land. It is this real estate the plaintiffs claim was undisposed of in the will and say that as to it Mrs. Wood died intestate, that it passed under the statute of descent and distribution. In due course this issue came on for decision. The court held, in the decree appealed from, that by virtue of the codicil of April 27, 1915, this real estate

passed to the infant, Anna E. Neblett, and provided also for subsequent action by the court if necessary to protect the interests of the two charitable institutions under the compromise agreement there referred to, and it is from that decree that this appeal is taken.

Is this a case of partial intestacy and to what rules must we look for guidance?

[1] Partial intestacy is looked upon with disfavor. Wills are written for the purpose of disposing of property. In the recent case of *McCabe* v. *Cary*, 135 Va. 428, 116 S. E. 485, the court, speaking through Judge Burks, said: ‘

“The only reason anyone can have for making a will is to change the devolution of his property from that prescribed by the statutes of descent and distributions. Hence there is a strong presumption that the testator intended to dispose of his entire estate, and courts are decidedly adverse to adopting any construction of a will which leaves a testator intestate as to any portion of his estate, unless compelled to do so. *Coffman's Adm'r* v. *Coffman*, 131 Va. 456, 466, 109 S. E. 454. The judicial expositor, therefore, starts out with this presumption.” Pages 433-444 (116 S. E. 487).

Also, in *Coffman* v. *Coffman*, 131 Va. 456, 109 S. E. 454, another recent case, the rule is thus stated:

“We start out with the legal presumption that the testator intended to dispose of his entire estate. There is a strong presumption against partial intestacy, intensified where, as here, the testator has used a general residuary clause, and the courts have for a long time inclined very decidedly against adopting any construction of wills which leaves the testator intestate as to a part of his estate, unless that result is absolutely unescapable.”(Page 466.)

In *Gallagher* v. *Rowan's Adm'r, et als.*, 86 Va. 823, 11 S. E. 121, Judge Lewis, quoting from Mr. Redfield, said:

"The courts have for a long time inclined very de-cidedly against adopting any construction of wills which would result in partial intestacy, unless absolutely forced upon them. This has been done partly as a rule of policy, perhaps, but mainly as one calculated to carry into effect the presumed intention of the testator. For the fact of making a will raises a very strong presump-tion against any expectation or desire on the part of the testator of leaving any portion of his estate beyond the operation of his will."

See also *Miars* v. *Bedgood*, 9 Leigh (36 Va.), 361. This statement of the law was quoted with approval in *Prison Association* v. *Russell*, 103 Va. 563, 49 S. E. 966.

[2] In 28 Ruling Case Law, section 189, it is said:

"When a will is executed the reasonable and natural presumption is that the testator intends to dispose of his entire estate. There is no presumption of an inten-tion to die intestate as to any part of his estate when the words used by the testator will carry the whole." See also *Bosley* v. *Bosley's Executrix*, 14 How. 390, 14 L. Ed. 468; Page on Wills, section 466. In all of these cases the presumption relied upon ran counter to the presump-tion against disinheritance.

On the other hand the court in *Blankenbaker* v. *Early*, 132 Va. 408, 112 S. E. 599, said:

"Where an ambiguity exists in a will, unless there is a manifest intention to the contrary, the presumption is that the testator intended that his property should go in accordance with the law of descents and distribu-tions." Citing 40 Cyc., page 1412.

In *Sutherland* v. *Sydnor*, 84 Va. 830, 6 S. E. 480, this rule was stressed:

"In the construction of wills, effect must be given to the intention of the testator, if that can be discovered and is consistent with the rules of law. But the inten-

tion to dispose of his estate must be manifested with legal certainty, otherwise the title of the heirs at law will prevail; for conjecture cannot be made to supply what the testator has failed to sufficiently indicate on the face of the will.

"The law has provided a definite successor to the estate in the absence of a testamentary disposition, and the heir is not to be disinherited unless by express words or necessary implication. *Wootten v. Redd's Ex'or*, 12 Gratt. (53 Va.), 196; *Hatcher v. Hatcher*, 80 Va. 169; *Smith v. Bell*, 6 Pet. 68; *Senger v. Senger's Ex'or*, 81 Va. 687."

In 28 R. C. L., page 229, the rules are thus balanced:

"Furthermore it should be observed that the rule that a testator is presumed to have intended not to die intestate as to any part of his estate is not of greater force than the rule that an heir is not to be disinherited except by express words or necessary implication."

In *McDonald v. Ledford*, 140 Tenn. 471, 205 S. W. 312, the court said:

"We cannot hold that the rule that a testator is presumed to have intended not to die intestate as to any part of his estate is of greater force than the rule that an heir is not to be disinherited except by express words or necessary implication. Indeed, we are of opinion and hold that the latter rule should be the paramount one in case the two come in conflict, since it is less fictional or metaphysical and is based upon what we know to be the natural prompting of the parental heart, to recognize and not disregard one's own offspring in the last testamentary disposition of his estate. *Shanner v. Wilson*, 207 Pa. 550, 56 Atl. 1085; *Watson v. Martin*, 228 Pa. 248, 77 Atl. 450, 20 Ann. Cas. 1288. In the solemn act of formulating the provisions of such an instrument, the mind of the average testator must turn to a contempla-

tion of the Great Parent; and, even as there is a craving not to be disowned by Him, such an one is not to be deemed to be inclined towards the disinheriting of those whom he has brought into this world, and who therefore are the natural recipients of his bounty.''

[3] This principle is in a measure feudal and is akin to the law of primogeniture: It had its origin in a society saturated with aristocratic rather than democratic traditions; the underlying purpose being the conservation of the estate for the preservation of the family, and is reinforced by the fact that we should not overlook the claims upon us of those for whose being we are responsible.

''As among testator's collateral relatives or strangers, favoring presumptions carry little or no weight against the testator's apparent meaning.'' 1 Schouler on Wills (6th ed.), 885. Certainly in such a case it is a vanishing presumption and is weakened by the further fact that we have here a residuary clause which is entitled to a flexibility and breadth of construction that might not be proper in some antecedent paragraph, and by the further fact that each of his kin who are here complaining have, as a matter of fact, been remembered. *Wildberger* v. *Cheek*, 94 Va. 517, 27 S. E. 441; *Crouch* v. *Davis*, 23 Gratt. (64 Va.), 62; *Smith's Ex'or* v. *Smith*, 17 Gratt. (58 Va.), 268.

Dealing with this phase of this case we may, with confidence, say that when all hearts are opened and all desires known it will be found, in wills deliberately written, that there are few testators whose settled purpose was to leave untouched a part of their estate, and a residuary clause adds force to this rule.

Testators write wills that their estates may pass under them.

[4] Another rule to be remembered is thus stated in *Todd* v. *McFall*, 96 Va. 754, 32 S. E. 472:

"It is universally conceded that as a general rule the personal estate is not only the primary, but the only fund for the payment of legacies.   It is equally a general rule that the real estate is not chargeable under the law with their payment, if the personal estate proves insufficient, unless the testator has charged the land with their payment.   This he may do either in express terms or by implication, but his intention to do so must be clear and manifest.   And so in every case, whether the real estate is charged with the payment of legacies is a question of intention.   The intention to charge must be either expressly declared, or be clearly deducible from the language and disposition of the will."

[5] In that case certain pecuniary legacies "payable from my estate" were held not to be a charge upon the realty.   The realty here, however, had been specifically devised.

But as illustrating the varied meaning which attaches to this word under varying conditions we find in *Smith's Executor* v. *Smith, supra,* this provision: "All the rest and residue of my estate which may at any time accrue and come to the hands of my executor, either from the lapsing of any of the aforesaid legacies or otherwise, I wish to be divided into equal portions, corresponding in number with the number of my brothers and sisters living at the time of my decease."   It was held that the estate which should come into the hands of the executor covered decedent's entire holding.

It occurs frequently in the will.   Ordinarily it is a comprehensive expression.   The wayfaring man who was told that one's estate amounted to a certain sum would have little hesitancy in determining in his own mind what was meant.   3 Words and Phrases, page 2475, thus defines it:

"Lord Holt says that the word 'estate' is *genus gen-*

*eralissimum*, and includes all things, real and personal. In *Countess of Bridgewater* v. *Duke of Bolton*, 1 Salk. 236, Pollock, C. B. calls it '*nomen generalissimum*,' comprehending everything, real and personal, over which the testator had a disposing power. *Campbell* v. *Campbell*, 37 Wis. 206, 215." And in the same authority, at page 2476, appears this rule, "The word 'estate,' in general, is applicable to anything of which riches or fortune may consist."

In Schouler on Wills (6th ed.), section 1089, is this definition: "The word 'estate' is a general term, and in modern construction may be said to embrace *prima facie* the whole estate of the testator, both real and personal, and his property of every description." The context may show that no such broad definition is proper. *Todd* v. *McFall, supra*.

No rule is absolute. They but serve to aid us in ascertaining the testator's intent. That is the one dominant consideration which runs like a silver thread through the fabric of our decisions. It has been said that no will has a brother. The language is never the same, and should it be, circumstances attendant might so differ as to necessitate a widely divergent construction. Their phases are as protean as life itself.

The conclusion we reach on this point is that this comprehensive definition should attach as a primary proposition and is not to be limited unless there is something in the instrument or in the circumstance in which it was written to indicate it was used in a different sense.

[6-8] Stress is laid upon the definition of the word pay. In the will such expressions as "to be paid out of my estate," "to be paid," etc., frequently occur. This is not a word of unbending significance, although it has been held to mean a discharge in money of a sum due. We pay debts and with this definition so limited it is no

more accurate to speak of the payment of a legacy than it is to speak of a payment of a devise. A direction to pay is frequently but an order to transfer or to pass that in view to the party entitled. See Bouvier's Law Dictionary. *Salisbury* v. *Slade*, 22 App. Div. 346, 48 N. Y. Supp. 55, 58; and in *Re Tatum*, 34 Misc. Rep. 25, 69 N. Y. Supp. 501, 503. And it is a common expression where bequests are ordered to be satisfied. After all, the use of this word is but one of many things to be remembered.

Taking up in some detail expressions used in this will we find the first paragraph directs that the testatrix's just debts be paid out of her estate. We have little difficulty in reaching the conclusion that this provision, unless modified by something extraneous, is an expression of a desire that these debts be paid without any distinction as to the sources from which the necessary funds should come. As a matter of convenience they would probably be paid out of the personalty, but no such limitation is imposed by the words used. *Lee* v. *Lee*, 88 Va. 805, 14 S. E. 534.

The second, third, and fourth paragraphs direct that the legacies there given be paid at once, and in the first two instances there is specific direction that they be paid out of "my estate." From this it is argued that "estate" as here used means personal estate only, because the executors, in the nature of things, could not immediately make payments from the proceeds of realty, that such a source could not have been contemplated by the testatrix. If there be force in this suggestion then, by the same token, the testatrix may have meant that legacies not to be so promptly satisfied could be taken from her estate at large.

The fifth paragraph is significant in its use of the word "estate." From it we gather that she received

from her first husband's estate three thousand dollars and that she wished to return this to his children by a former marriage. There is nothing to show that said sum so received by her came from Dr. Ingram's personal estate only, or that this term is here used in any other than its primary sense.

In the seventeenth, or residuary, clause the executors are directed, "after paying off the above gifts and bequests in the order named, should there be any residue of my estate, that they shall divide it equally between the Sheltering Arms Hospital and The Home for Incurables, located in the city of Richmond, Va., and pay the same over to the properly constituted authorities of said institutions." While the residuary clause in the first codicil is "if there be any remainder to the credit of my estate after payment of all the items mentioned and directed by my will, I direct them to pay such remainder to my namesake, Anna E. Neblett."

"Gifts and bequests" are mentioned in this seventeenth clause. Bequests usually deal only with personal property, while gifts have a wider significance. The definitions of these words are not rigid. "Courts often construe the word 'bequest' to mean 'devise' and 'devise' to mean 'bequest.' *Rountree* v. *Pursell*, 11 Ind. App. 522, 39 N. E. 747."

The usual phrase of testamentary disposition is: "I give, devise and bequeath." The word "give" is well adapted to such disposition, for the ruling purpose is to confer property rights gratuitously. *Allen* v. *White*, 97 Mass. 504.

We are not concerned with the conflict of interest between these charitable institutions and Anna E. Neblett. A settlement satisfactory to them was had out of court and this settlement was recognized and affirmed in the decree appealed from. It is only necessary to de-

termine if this estate which the executors are ordered to pay over is confined to the personalty or is inclusive. Executors, by virtue of their office as such, have no power over the real estate.  Any power which they have must be conferred by the will itself, either in terms or by implication.   It is fair to assume that Mrs. Wood was a lady unversed in technical expressions.   She probably knew little about law.   The draftsman, Mr. Royall, was also a layman.   They doubtless believed that the executors would take charge of the estate and dispose of it as directed, while the idea that the laws which governed real and personal property differed may never have occurred to them, nor did they deem it more important that the will mention one class of property rather than another, or that it mention any class at all. In all likelihood they looked upon the word "estate" as all-embracing.   And Mrs. Wood, when she came to write the codicils thereto, must have retained this impression.   Note how in ordered sequence she dealt satisfactorily and completely with the situation before her. There were neither husband nor children surviving.  All of her kin so far as this record shows had been remembered.   She made gifts to those closely related.   She dealt generously with the grand-children of her first husband.   She created a trust fund for her church.  She provided a memorial to her second husband, religious in its nature; and the residue of her estate she gave to two charitable institutions in which she was interested. Afterwards, and doubtless because she was a namesake, made Anna E. Neblett her residuary legatee.   In the detailed distributions made before she came to the residuum of her estate, unequal legacies were provided for.   If the real estate did not pass at all, the namesake, Anna E. Neblett, has received many thousand dollars more than any of the kin in her class or in any

class. Can it be that after this careful and discriminating distribution this testatrix desired her modest holding of land to be divided out under the statute of descent. All things are possible, but not probable, and this is one of them.

When sifted down, we find that we are asked to limit the scope of this will because of the use of the word "pay," because in some instances the executors are directed to pay "at once," because of the use of the word "bequest" and because the executors are directed to make final distribution. All of this is entitled to weight, but in its last analysis, considering this will as a whole and the manner of its execution, we reach the conclusion that this testatrix intended to dispose of her entire "estate" and that she adopted that meaning of this word which ordinarily attaches. It follows that all gifts are general charges thereon.

As has been well said in such cases neither presumptions of law nor decided causes are very helpful. The will must be read as a whole and the circumstances of its execution are to be considered. When this is done, we are led irresistibly to the conclusion reached. It is in keeping with the presumption which the judicial expositor starts out with and none other is "absolutely forced" upon us, and this construction of that instrument is not changed because she appeared to be under the impression that her estate in its entirety in orderly procedure should be dealt with by her executors.

The decree appealed from must be affirmed.

*Affirmed.*