# Staunton

## Board of Missions of the Methodist Episcopal Church South v. Robert B. Brotherton and Others.

September 10, 1941.

Record No. 2359.

Present, All the Justices.

The opinion states the case.

*George P. Young* and *S. B. Campbell,* for the appellant.

*J. S. Andrews* and *W. B. Snidow,* for the appellees.

BROWNING, J., delivered the opinion of the court.

The eminent judge of the trial court has written an opinion which is filed as a part of the record in this case. It is clear, forceful and convincing, and we are so fully in accord with the views which he expresses that we adopt the opinion as our own.

"This cause is submitted on the bill and exhibits, the demurrer and answer of the Board of Missions, and a stipulation as to facts. From these it appears that Miss Annie Brotherton died February 19, 1937, unmarried and without issue, leaving three writings, dated respectively February 10, 1936, December 11, 1936, and January 2, 1937, which were together probated as her will on May 21, 1937.

"At the time of her death she owned: cash in bank, $713.53; life insurance $1,003.51; six shares of bank stock, $90.00; house and lot in Pearisburg worth $3,000 to $4,000.

"She was an illegitimate daughter of Priscilla Brotherton, who also had a son named Ballard Brotherton, who was a brother or half brother of Miss Annie. Her heirs at law are the descendants of her mother's only brother, and are the complainants, Inez Wilburn, Robert B. Brotherton, Hattie B. Campbell, Vernie V. Moye, and the defendant, R. H. Brotherton. She refers in her will to her brother Ballard, and to her great niece Winnie Brotherton, but aside from this there is no evidence as to her relationship to others named in her will, and no evidence of her attitude towards these heirs at law or others. The will is therefore to be construed without aid from extrinsic circumstances, other than knowledge of the property she owned.

"The only item in dispute is her real estate, consisting of a house and lot, and being her residence property in the town of Pearisburg, conveyed to her, and her mother Priscilla and her brother Ballard in 1889; Priscilla devised her interest to Annie and Ballard in 1900, and Ballard devised his interest to Annie in 1903. The complainants contend that Miss Brotherton died intestate as to this real estate and that it descended to them and the defendant R. H. Brotherton as heirs at law. The Board of Missions of the Methodist Episcopal Church, South, which is the only defendant who has appeared, claims that this real estate passed to it under the will.

"The first will, dated February 10, 1936, states that the testatrix does 'make the following disposal of my property such as I have at the time of my death;' appoints Frank Brotherton, William J. Brotherton and Miss Nelle Brown Eaton as executor; 'with compensation from my estate'; directs the payment of her debts; the placing of a suitable marker at her grave, to carry the names of herself, her mother and brother; gives $100 to Dr. J. B. Nichol. Then she says: 'Should there be anything more from my estate after burial, I request the following bequests:' to Frank Brotherton $200. to W. J. Brotherton $150. and to Sheffey Hutchinson $50.00. She then says that on separate sheets of paper, written in pencil, she has made a list of household goods, and to whom they are to go, and that 'I do not want a public sale.' Then follows this clause:

" 'After all my debts are paid, and bequests have been met, should there be any money coming to the estate from Life Insurance, Bank stock or sale of property, I bequeath it to the Board of Missions of the Methodist Episcopal Church, South, to be used for Mission work in the Methodist Episcopal Church, South, in Africa. I request that Miss Bess Eaton look after this fund and see that it is placed with the said Board of Missions of the Methodist Episcopal Church, South.'

"The second writing is dated December 11, 1936, and begins with the sentence, 'The Will of Miss Annie Brotherton, of Pearisburg, Virginia, made at Catawba, Virginia, December 11, 1936.' It gives to persons named a long list of household items, which were all the tangible personal property she had; and then follows this clause:

" 'In the division of the property all previous disposed of money is withdrawn from my first will. This amendment to the first will is made this day, Dec. 11, 1936.'

"She then leaves to Mrs. Frank Brotherton $100, provides that the executor is to be Bessie Eaton, who will see that her just debts are paid, and that Sheffey Hutch-

inson is given $50.00, that a suitable monument is erected at the cemetery for her, Annie Brotherton, and then

" 'Should there be any money left after these bequests are made it shall go to the Board of Missions of the Southern Methodist Church to be used in the African Mission work.'

"In the third writing, executed January 2, 1937, she nominates Miss Bessie Eaton and W. J. Brotherton as executors; directs that Miss Bessie Eaton shall collect her life insurance policy, 'and to pay my debts and other expenses.'

"The defendant Board of Missions contends that the word 'money' used in the above quoted clauses, taken with the context of the writings, and the presumption that the testatrix intended to dispose of her entire estate, should be construed to include the real estate and to vest title to that in the Board. This presumption is thus stated in *McCabe* v. *Cary*, 135 Va. 428 [116 S. E. 485]:

" 'The only reason anyone can have for making a will is to change the devolution of his property from that prescribed by the statutes of descent and distributions. Hence there is a strong presumption that the testator intended to dispose of his entire estate, and courts are decidedly adverse to adopting any construction of a will which leaves a testator intestate as to any portion of his estate, unless compelled to do so.'

"But along with this presumption goes the rule stated in *Neblett* v. *Smith*, 142 Va. 840 [128 S. E. 247], quoting from *Sutherland* v. *Sydnor*, 84 Va. 880 [6 S. E. 480], that

" 'In the construction of wills, effect must be given to the intention of the testator, if that can be discovered and is consistent with the rules of law. But the intention to dispose of his estate must be manifested with legal certainty, otherwise the title of the heirs at law will prevail; for conjecture cannot be made to supply what the testator has failed to sufficiently indicate on the face of the will.

■ " 'The law has provided a definite successor to the estate in the absence of a testamentary disposition, and the heir is not to be disinherited unless by express words or necessary implication.'

"'The word 'money' has on several occasions been construed to include real estate in a will. An instance is *McCabe* v. *Cary, supra.* The language there was: 'I leave to my sister Gillie the use of the income from all money in my name, from my father's and mother's estate so long as she lives.' The opinion shows that most of what the testatrix had received from this source was stocks and bonds, some of which were afterwards sold and the proceeds invested in two houses and lots, which were the chief value of the testatrix' estate when she died, and that when the will was made and at the time of the testatrix' death there was in fact no money of any consequence in her name from her father's estate. For these and other reasons stated in the opinion the court held that the testatrix intended the quoted language to include the houses and lots. Judge Burks reviews a number of cases. Among them is *Sweet* v. *Burnett,* 136 N. Y. 204 [32 N. E. 628], which he says presents a strong argument against ever giving to the word 'money' a meaning broad enough to cover land. He quotes that case as saying that 'certainly no such violent extension of the word beyond its normal and proper meaning can ever be justified unless the intention to so use it is clearly manifest on the face of the will and put beyond all reasonable doubt;' and that 'While it is true that the meaning of the word "money" when used in a will depends upon the context, and may be effected by the condition of the testator's property and the surrounding circumstances (*Smith* v. *Burch,* 92 N. Y. 228), it must yet be added that a construction broad enough to give it a meaning which includes real estate, if ever possible, can only be sustained where the intention is so clear and plain as to be in effect compulsory.'

"'The California case of *In re Miller* may be found in

17 Am. Rep. 422, instead of 22 Am. Rep. as the opinion has it. In addition to the cases referred to by Judge Burks may be cited also the case of *Talbot* v. *Anderson* (Pa.) [292 Pa. 454], 141 A. 256; and [*In*] *re Ingham* (Pa.) [315 Pa. 293], 172 A. 662, and the note to this last named case in 93 A. L. R., p. 514.

■ ''From the cases it may be concluded that while the word 'money' used in a will may be held to be broad enough to cover land, it must unmistakably appear from the will that it was the intention of the testator to give it that meaning.

■ ■ ''I cannot gather such intention from the will in this case. If the first will stood alone there might be some basis for the argument that it should be construed to include the residence, on the ground that when the testatrix said 'any money coming to the estate from Life Insurance, Bank stock or sale of property,' she meant the sale of real property, because there was nothing else for the phrase 'sale of property' to apply to. But that is by no means certain, and there is evidence within that will, read in the light of the property she owned, that she did not so intend. And when we look to the second writing, we find she says there, 'In the division of the property all previous disposed of money is withdrawn from my first will.' What she gave to the Board of Missions in the first will was 'money', and by this provision she took that away. Now by this second writing after revoking that bequest to the Board, she leaves $100 to Mrs. Frank Brotherton, $50 to Sheffy Hutchinson, and then says: 'Should there be any money left after these bequests are made it shall go to the Board of Missions.' These bequests total only $150. She had more than $700 cash in bank. If she had in mind her real estate, worth $3,000 to $4,000, and intended to give that to the Board by this clause, it is not likely she would have indicated this doubt that there might be anything left from paying these two bequests of $150. The writing dated January 2, 1937, throws a little further light

on what was in her mind. In that she directs Miss Eaton to collect her life insurance policy and pay her debts and other expenses, presumably including her funeral expenses. This insurance was over a thousand dollars, and more than sufficient for these purposes, as shown by the executor's settlement. She owed no debts of any consequence. The settlement indicated only $35.00. It seems more reasonable to believe that in this writing of December 11, the testatrix had in mind the money she had in bank, and that after paying these two bequests of $150.00, she meant to give the balance of that money to the Board, leaving her debts and funeral expenses to be paid out of the insurance. She is presumed of course to know what property she had and what debts she owed. She knew she had the $700. in bank, the $1,000 life insurance, the $90 of bank stock, and this real estate worth $3,000 to $4,000. In her will she refers to her 'property,' her 'estate,' her 'money.' There was evidently some distinction in her mind as among these items. Certainly she did not use the word 'money' throughout the writings as a term describing all she had. And when she revoked all money bequests made in the first writing, which necessarily included that made to the Board, and then made two bequests amounting to $150. directed that her debts be paid, provided for a monument, and then said 'should there be any money left after these bequests are made it shall go to the Board,' it would require much violence to the ordinary meaning of words to say she meant by that to give to the Board real estate worth $3,000 to $4,000. Why she did not refer to her real estate in her will, of what she had in mind about it, nobody can say from the will, and that is all we have. Since she did not, and since by no reasonable interpretation consistent with the language used, as it seems to me, can the word 'money' used by her be stretched to include her real estate, it follows that she did not devise her real estate, but died intestate as to it, and it passes by descent to her heirs at law. As said in the above quo-

tation from *Neblett* v. *Smith,* ''Conjecture cannot be made to supply what the testator has failed to sufficiently indicate on the face of the will.'.''.

The decree of the trial court is affirmed.

*Affirmed.*