# Richmond

## MARY ANN KLING, ET AL. v. VIRGINIA TRUST COMPANY, TRUSTEE, ET AL.

August 28, 1974.

Record No. 730826.

Present, All the Justices.

*Thomas S. Word, Jr. (Harry Maurice Herman: Julian S. Levin [S. C.]; William E. Kaiser, Jr. [Ill.]; McGuire, Woods & Battle; Levin; Sams & Calhoun [S. C.]; Kaiser, Dodge, Dornbaugh & Sullivan [Ill.],* on brief), for appellants.

*James S. Dockery, Jr. [N. C.] (Julious P. Smith, Jr.; Hudson, Petree, Stockton, Stockton & Robinson [N. C.]; Williams, Mullen & Christian,* on brief), for appellees.

Harman, J., delivered the opinion of the court.

The question presented by this appeal is the proper construction of Item 8 of the will of Robert Haskins, deceased.

The facts were stipulated by the parties and are not in dispute. Robert Haskins, a resident of Henrico County, died on January 8, 1934. He was survived by his widow and five children, namely, Marjorie Haskins Hughes (Marjorie), Helen Haskins Geissler (Helen), Mary Haskins Haygood (Mary), Robert Haskins, Jr. (Robert, Jr.) and Dorothea Haskins (Dorothea), who is now Dorothea Haskins Wilson.

Item 8 of Haskins' will left the residue of his estate in trust directing the trustees, or their successors,

". . . to pay over the . . . income therefrom in equal shares to my five children . . . during their respective lives, but I do direct and declare that such income shall not be subject to the claims of the creditors of my said children . . .

"And upon the further trust, upon the death of any one of my said children, to pay over and deliver the principal or corpus of the share of the child so dying, namely, one equal fifth part of my residuary estate, to such one or more or all of the descendants of the child so dying living at his or her death in such parts, shares and proportions as such child may by his or her last will and testament appoint, and failing such appointment, and to the extent that any such appointment shall prove ineffective or fail from any cause to operate, upon trust, after the death of any such child of mine, to pay and deliver the principal or corpus of his or her share of my said residuary estate equally to and among his or her children then living and the issue then living of any of his or her children that may then be dead, such issue to take its parent's share. And in the event that any of my said children shall die without issue living at his or her death, then the principal and income of the share of such child in my said residuary estate shall in that event be held upon the same trusts and subject to the same limitations that are herein declared and expressed with respect to the principal and income of the other shares thereof."

The trust was administered for the benefit of and the income distributed to the five children of Robert Haskins until the death of Marjorie, who died without issue on September 29, 1955. Thereafter, Virginia Trust Company continued to administer the entire corpus of the trust and distributed the income to the four surviving children of Robert Haskins until the death of Helen on November 12, 1966.

Helen was survived by two children, Mary Ann Kling and Rudolph Geissler, Jr., the appellants. Since Helen did not exercise her power of appointment, the trustee, under Item 8 of the will, distributed one fourth of the corpus of the trust estate in equal parts to the appellants.

Thereafter, the trustee administered the remaining corpus for the benefit of and paid the income therefrom to the three

surviving children of Robert Haskins until the death of Mary, who died without issue on March 3, 1972.

After Mary's death the present controversy arose. The appellants asserted that they were entitled, under Item 8, to receive one ninth of the remaining corpus in the fund, representing one third of the amount from which their late aunt, Mary, received the income. The two surviving children of Robert Haskins, Robert, Jr., and Dorothea, claimed that they were each entitled, under Item 8, to receive one half of the income from the remaining corpus during their joint lives with one half of the remaining corpus to be distributed to their respective issue upon the death of either with issue.

The trustee, to resolve this dispute, filed a bill in the trial court for advice and guidance in the administration of the trust.

The chancellor focused his attention upon the emphasized portion of the last sentence of Item 8 which reads:

". . . And in the event that any of my said children shall die without issue living at his or her death, *then the principal and income of the share of such child in my said residuary estate shall in that event be held upon the same trusts and subject to the same limitations that are herein declared and expressed with respect to the principal and income of the other shares thereof." (emphasis supplied)*

Observing that Helen's right to share in income from the corpus terminated upon her death and that this share of the corpus had been distributed to her issue, the chancellor reasoned that Helen's share no longer existed and that only three shares remained in the trust immediately prior to the death of Mary. Since Mary's right to share in the income terminated at her death and since she died without issue, the chancellor held that Mary's share should be added to the other two shares, namely to the shares held for the benefit of Robert, Jr., and Dorothea.

We awarded an appeal from the decree which carried this ruling into effect.

The appellants argue that they are entitled to prevail because, they say, the will shows that the testator clearly intended equal treatment of each line of his progeny. They argue, alternatively, that they are still entitled to prevail, under the rules of construction, if the meaning of "other shares," as used in the last clause of Item 8, is ambiguous.

The appellees [1] maintain that the testator's clear intent is that his grandchildren and their issue need not and might not be treated equally. To support this argument appellees point out that the power of appointment in each of the testator's children allows unequal treatment of that child's issue. They also argue that this same intent is shown by the failure of the will "to provide any terms which would permit the distribution of the share of any child to the issue of any other child." The appellees place great emphasis on the word "held" in the last sentence of Item 8. They say that the testator was mindful that shares of the corpus held for a child dying with issue would be distributed to the issue of that child, having so provided in the sentence just preceding the crucial last sentence. They argue that it is illogical that the testator would have directed that the share of a child dying without issue "be held upon the same trusts and subject to the same limitations . . . [as] the principal and income of the other shares thereof" if he had intended the issue of a deceased child to immediately share in a part of the corpus held for a child dying without issue.

The cardinal rule in the construction of wills is that the testator's intention will be given effect unless prohibited by some rule of law or public policy. This intention must be gathered from the entire will and all of its provisions considered together, rather than from any particular form of words or language employed in a single sentence, clause or phrase.

Our function, of course, is to discern the testator's intent from the language used in the will, giving effect to and reconciling, if possible, all of its provisions.

The general intent of a testator, often referred to as the dominant intent, clearly and definitely expressed in his will prevails over a particular or special intent expressed in a part of it. If, upon a reading of the whole will, there appears to be a general scheme for the disposition of the property pervading as a whole, this general scheme will not be defeated by isolated clauses which may be susceptible to more than one interpretation.

---

[1] Virginia Trust Company, while a nominal party, did not file a brief or appear upon appeal. The appellees referred to herein are the real parties in interest, Robert, Jr., Dorothea and their issue.

■ Here we think it clear that the testator's dominant intent was to treat each line of his descendants equally and to assure that his property would ultimately pass to his blood kin rather than to strangers. Certainly he made provision for his children to share equally in the income from the residue of his estate. By granting a power of appointment to each of his children we think the testator further demonstrated this dominant intent that each line of his progeny be treated equally. While the child could appoint unequal shares to his living descendants, he could only appoint to that limited class, that is the child's descendants who were also descendants of the testator. In the event that the child failed to validly exercise the power of appointment, the testator provided for a *per stirpes* distribution of that child's share of the principal to that child's living descendants, a further demonstration of the testator's intent that each line, if not each individual, would be treated equally.

The chancellor, in his opinion, recognized that his construction of the will could create a possible partial intestacy should the last surviving child of the testator die without living issue. Such an interpretation runs counter to the presumption so deeply embedded in our law that a testator, by making his will, intended to dispose of his entire estate in the absence of a clear and express contrary intent.

We hold, therefore, that the proper construction of the will is that Mary's share be divided into three equal parts with one part to be distributed to the appellants and one part to be added to each of the shares held in trust for the benefit of Robert, Jr., and Dorothea.

*Reversed and remanded.*