# Helen B. Haag, Individually and as Executor, etc.

## v.

## John Stickley, et al.

Record No. 890635

March 2, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Lacy, and Hassell, JJ., and Poff, Senior Justice

*J. Sloan Kuykendall (Kuykendall, Wetsel & Kuykendall,* on briefs), for appellant.

*Burke F. McCahill (Justus M. Holme, Jr.; Hanes, Sevila, Saunders & McCahill,* on brief), for appellees.

JUSTICE COMPTON delivered the opinion of the Court.

In this appeal, we determine whether the trial court correctly construed and interpreted a will.

At issue is Kenneth Lee Otto Haag's holographic will dated January 20, 1983, and a holographic codicil dated October 5, 1985. The testator died in May 1986, and the will was duly probated in the Clerk's Office of the court below. Helen B. Haag, the testator's former wife, qualified as executor of the estate, which included 689 shares of common stock in the Front Royal Supply Company, Inc. The inventory showed the value of the stock to be in excess of $254,000.

In May 1987, appellees John Stickley and Wayne Blye filed this declaratory judgment proceeding in equity against appellant Haag in her individual and representative capacities. The plaintiffs

asked the court to construe and interpret the will in order to determine the rights of the parties in the shares of stock. Upon consideration of a stipulation of facts and argument of counsel, the chancellor ruled in favor of the plaintiffs, and we awarded defendant this appeal from the March 1989 final decree.

Reproduced below is the portion of the will which is central to this controversy.

> I hereby bequeath my shares of stock in Front Royal Supply, Inc. as follows.
> To Charles Smoot 50 ~~shares~~ shares (500) X ᴬ
> To John Stickley — shares
> X ᴿ ~~To Melvin Printz~~ no shares
> To Wayne Blye — shares
>
> In case any of above are deceased or not working for Front Royal Supply Inc. at the time of my death, their shares are to be divided equally among the survivors who are still with & working for Front Royal Supply Inc, to closest point. Odd share to go to person with longest service with the Inc. Corp.

A provision of the amendatory codicil also is particularly relevant. It reads as follows, complete with spelling and other errors: "In case Chs.Smoot is deceased or any other receipitent their stare will go back in the estate."

According to the stipulation, the parties agreed that "the Will must speak for itself," and that extrinsic evidence would not be presented. The parties also agreed that the will is valid as probated and that the documents, including the "notations," were written by the testator.

According to the stipulation, Charles Smoot, Stickley, Melvin Printz, and Blye had been employees of Front Royal Supply Company, which apparently was owned by the testator. Smoot was the manager of the company's Front Royal store and had worked for the testator about two years longer than had Stickley.

Stickley was the manager of the company's Winchester store. Blye was the assistant manager of that store and had worked for the company for a lesser period than had Stickley.

Both Stickley and Blye remained company employees until the testator's death. Apparently, although the record is unclear on this fact, Smoot was likewise a company employee when the testator died.

Printz, whose name appears in the foregoing portion of the will beneath the horizontal lines and before the word "no," had been a company employee. He was "fired" and left the company in "1984-85," according to the stipulation.

The trial court, in finding in favor of Stickley and Blye, ruled that of the 689 shares of stock owned by the testator at his death, "Smoot gets the first 500 shares." He decided that the remaining 189 shares "are to be divided equally between . . . Stickley and . . . Blye, with the odd share going to the person with the longer service."

The chancellor reasoned that when considering the "four corners of the will," it is "plain" the testator wanted Smoot to have the first 500 shares of his stock. The chancellor also said it was "clear" that the testator "did not know whether Stickley or Blye, or either of them would be working for the company at the time that he died." Thus, according to the court, the testator "also made it clear" that he wanted the remaining shares in excess of the 500, in the testator's language, "to be divided equally among the survivors who are still with and working for" the company with the odd share to pass to the person with the longer company service. The chancellor also noted that, in the codicil, the testator specified that if Smoot or any other recipient predeceased the testator, the share of such deceased beneficiary "would go to the residuary clause."

Asserting the trial court erred, defendant argues that the testator, when he drafted his "original will," intended not to give Stickley, Printz, and Blye any of the 689 shares "because, by the language of his will, he left all of that stock to Charles Smoot." Defendant continues, "It is clear from the will that testator, at the time he wrote his will, included Stickley, Printz, and Blye as possible takers of stock in the company if he later determined to give them stock, at which time he intended to state the number of shares that each was to receive." That time never arrived, according to defendant, because the testator failed to write in his will a

specific number of shares he intended to leave to Stickley and Blye. Asserting that the testator's intent at the time he wrote the will "is the important inquiry," defendant says that "what the testator may have later intended cannot be supplied in the process of construing the will" unless that "later-formed intention" is set forth in the document.

In addition, defendant thinks "it fair to assume" that the testator wrote the entire will prior to making deletions and interlineations, which appear in numerous places in both the will and codicil. Defendant says "that at some later time the testator struck out the name Melvin Printz and wrote in 'no' before the word 'shares'." Noting that this change was initialled by the testator, defendant observes that the testator "added no words to his will clarifying his intention with respect to Stickley and Blye, nor did he add his initials before their names indicating that he may at that time have formed an intent to make clear that they are beneficiaries under the will." According to defendant, when the testator struck over the number "689" after Smoot's name and inserted "500," again adding his initials, the testator drew "blanks" following the names of Stickley and Blye. This indicated, defendant says, that the testator still had not formed an intention upon the number of shares, if any, to be given to Stickley and Blye.

Consequently, defendant contends, the 189 shares should not pass to the plaintiffs but should be a part of the residuum. We do not agree with defendant's contentions.

Recently, we have summarized a number of the principles applicable here. In construing a will, the testator's intention controls, unless contrary to an established rule of law. *Thomas* v. *Copenhaver*, 235 Va. 124, 128, 365 S.E.2d 760, 763 (1988). The whole will must be examined to determine the testator's intention and effect should be given to all parts of the document, as far as possible. *Id.* Even though the language of the will may be obscure or uncertain, the testator's intention will prevail, if it can be ascertained. *Id.*

Moreover, when the words of the will are capable of two different constructions, "that should be adopted which is most consistent with the intention of the testator as ascertained by other provisions in the will; and when the intention of the testator is incorrectly expressed, the court will effectuate it by supplying the proper words." *Waters* v. *Trefouret*, 117 Va. 186, 190, 83 S.E. 1078, 1079 (1915).

■ It is true that in ascertaining the testator's intent we examine the words used in light of the circumstances surrounding the testator at the time of the will's execution. *Warner* v. *Baylor*, 204 Va. 867, 876, 134 S.E.2d 263, 270 (1964). However, we cannot ignore subsequent changes to the will as we consider that intent. "A will is an ambulatory instrument, not intended or allowed to take effect until the death of the maker. It may be changed during life as often as the mind and purpose of the testator change." *Timberlake* v. *State Planters Bank*, 201 Va. 950, 957, 115 S.E.2d 39, 44 (1960).

■ Against the background of the foregoing principles, we cannot say that the chancellor misinterpreted or misconstrued the testamentary documents. Insofar as the bequest of company stock is concerned, the testator's plan clearly appears from the will and from the circumstances prevailing at the time the will was drawn. The testator wished to reward company employees for their past and continued service by leaving all his stock in the company to such of those employees who were living and still working for the company at the time of his death.

Thus, he bequeathed "my shares of stock" in the company, intending to give all the shares he owned. *Honaker* v. *Starks*, 114 Va. 37, 75 S.E. 741 (1912).

In *Honaker*, the testatrix provided: "I give, devise and bequeath to C. M. Starks my stock (one share) in the Bank of Bland County, located at Bland, Va." The testatrix owned five shares of stock in the bank. This Court held that she intended to give the five shares by use of the words "my stock," and that the gift was not limited or diminished by the subsequent parenthetical words, "one share." The Court said: "Statements of quantity are seldom given much weight, because the amount is often not exactly known, and is easily mistaken." *Id.* at 38, 75 S.E. at 742. *See* Code § 64.1-62.3 (unless contrary intention appears in will, "bequest of specific securities, whether or not expressed in number of shares, shall include as much of the bequeathed securities as is part of the estate at time of the testator's death. . . .").

Having identified the subject matter of the bequest, the testator designated the persons to receive the stock. He specified: "To Charles Smoot," "To John Stickley," and "To Wayne Blye." The quantity "500 shares" follows Smoot's name. No quantity is shown after Stickley's or Blye's names. Defendant contends the bequest is incomplete because it contains what she has labelled

"blanks" or omissions. We perceive no blanks or omissions. Rather, we view the terms to state individual bequests.

Where a bequest is to several individuals, whatever may be their relationship to each other, or however the statute of descents might operate upon such relationships, equality is the rule, unless the testator has established a different one. *Horne* v. *Horne*, 181 Va. 685, 690-91, 26 S.E.2d 80, 83 (1943). Therefore, we conclude from the language and arrangement of the words that the testator intended to make a gift of all of his shares to three persons with one receiving 500 shares and the other two receiving the balance, which they divide equally, the longer in service to the company receiving the odd share.

The testator's intent is further indicated by the manner in which he made corrections on the holograph. He struck through the name of Melvin Printz, probably after Printz had been fired in "1984-85." He initialled the deletion writing "no" before "shares." This demonstrates the testator's method of deleting a beneficiary and cancelling a bequest. He made other deletions in other portions of the will and codicil and initialled them also. In contrast, the names of Stickley and Blye remained in the will without being initialled but separately joined to the words "shares" by dashes or connecting lines, not blanks as the defendant urges. The connecting marks appear at mid-line and not at the bottom of the lines of the text where a blank ordinarily would be made. Moreover, the lines are undulating and not straight as a blank line usually appears. At any rate, it cannot be successfully argued that these lines serve to negate the bequest to Stickley or Blye; they should be treated as mere surplusage.

There are at least two plausible reasons why the testator did not specify the number of shares allocated to Stickley or Blye. First, as the chancellor observed, the testator probably was uncertain whether both would remain company employees until his death. According to the stipulation, Stickley had left the company in 1970 and had returned in 1972. Second, the testator probably was uncertain about the number of shares of company stock he would own when he died. For these reasons, the testator probably concluded that the exact number of shares passing to these two employees could be more accurately determined after his death.

Finally, the codicil further evidences the testator's intention to leave his company stock to Stickley and Blye, in addition to Smoot. In effect, the codicil provides that if Smoot or any other

recipient predeceases the testator, "their" share will go to the residuary estate. The plural possessive "their" can refer only to the foregoing three individuals and constitutes recognition by the testator that Stickley and Blye were to be recipients of the stock gift.

The only other legatees were two granddaughters, who received cash bequests "if living," and one Carl V. Haag, who received a bequest of municipal bonds "if he still lives." The defendant was the residuary beneficiary. Thus, if any of these other beneficiaries had predeceased the testator, the bequests, according to their provisions, automatically would have reverted to the residuum. Consequently, "their" does not refer to any of those persons. Actually, the codicil merely changed the survivorship provision of the stock gift to specify that, if one of the recipients of stock predeceased the testator, the share of that person would go into the residuary instead of to the other stock recipients.

For these reasons, we find no error in the decision of the trial court and its final decree will be

*Affirmed.*

JUSTICE STEPHENSON, with whom CHIEF JUSTICE CARRICO joins, dissenting.

I respectfully dissent.

It was "plain" to the chancellor, from a reading of the will as a whole, that the testator intended to bequeath shares to Stickley and Blye and that they would receive 95 and 94 shares, respectively. The majority agrees because it "cannot say that the chancellor misinterpreted or misconstrued the testamentary documents." I do not agree.

In interpreting wills, it is fundamental that the testator's intention will be given effect. *Kling* v. *Virginia Trust Co.*, 215 Va. 226, 229, 207 S.E.2d 890, 893 (1974). This intention must be ascertained from a reading of the will as a whole. *Id.* The testator's intention, however, "must be manifested with legal certainty, [and] . . . conjecture cannot be made to supply what the testator has failed to sufficiently indicate on the face of the will." *M.E. Church* v. *Brotherton*, 178 Va. 155, 159, 16 S.E.2d 363, 365 (1941) (quoting *Sutherland* v. *Sydnor*, 84 Va. 880, 881, 6 S.E. 480, 481 (1888)). *Accord Neblett* v. *Smith*, 142 Va. 840, 848-49, 128 S.E. 247, 249-50 (1925); *Waring* v. *Bosher*, 91 Va. 286, 289,

21 S.E. 464, 465 (1895); *Wootton* v. *Redd*, 53 Va. (12 Gratt.) 196, 206 (1855). Thus, a court has no authority to interpolate words in a will or to speculate as to the testator's intention.

In my opinion, the chancellor's conclusion, which the majority affirms, is solely the product of conjecture and speculation and authorizes bequests by implication which are not "manifested with legal certainty." I, therefore, would reverse the trial court's decree and hold that the 189 shares passed under the residuary clause.