# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Gordon v. Whitlock and Others.

### March 26, 1896.

1. Wills—*Several Testamentary Papers—Revocation.*—The mere fact of making a subsequent testamentary paper does not work a revocation of a prior one in the absence of an express revocation, unless the two are incapable of standing together. A will need not be confined to one paper, but may consist of several testamentary papers of different dates, and executed and attested in different ways, and at different times. The expression in the subsequent will, " This is my last will," is not entitled to any weight. If the subsequent paper is merely supplemental, it will be treated as a codicil; if partially conflicting, that of later date will operate to revoke the former so far as the provisions of the two are conflicting or incompatible. But, in the absence of a clause of revocation, the court will adopt that construction which will give effect to all the testamentary papers, if possible, sacrificing the earlier papers only so far as clearly irreconcilable with the later. In the case at bar the last will contains no clause of revocation, and there is nothing on the face of it to indicate that it was intended as a substitute for the first, except so far as the two are inconsistent. The last will disposes of only a small portion of the testator's estate, though he was desirous of having a ' will disposing of his property. The testator had every opportunity of destroying the first will if he so desired, but, instead, delivered that, with the other testamentary papers, to one of his executors shortly before his death, and there is no difficulty in reading the two wills and two codicils together as forming a complete testamentary disposition of the testator's entire estate. Under the evidence the two wills and Codicils 1 and 2 were properly admitted to probate, and " Codicil No. 3 " was properly rejected for want of sufficient mental capacity at the date of its execution.

Error to a judgment of the Chancery Court of the city of Richmond, rendered November 7, 1895, on motion wherein

the plaintiff in error was the plaintiff, and the defendants in error were the defendants.

*Affirmed.*

The plaintiff in error filed his bill in the Chancery Court of the city of Richmond, and with his bill brought into court the several testamentary papers referred to in the opinion. The plaintiff was one of the executors named in the testator's will, and he sets forth fully his views as to the mental capacity of the testator to make the several testamentary papers, and his reasons therefor, and, after enumerating the different persons who might be interested in the questions raised by the bill, he prays as follows :

" To the end, therefore, that justice may be done, your orator prays that all of said persons hereinbefore last named as parties in interest may be made parties defendant to this bill, and required to answer the allegations of this bill, but answers under oath are hereby expressly waived ; that a guardian *ad litem* may be appointed to defend the interests of the infant defendants aforesaid, who are the children of Charles E. Whitlock, deceased, and that such guardian *ad litem* may be required to answer this bill.

" That all proper steps may be taken, in conformity to law, and under the direction of this honorable court, to ascertain and determine the last will and testament of Charles E. Whitlock, deceased, and which of the said testamentary papers constitute his will ; and, when so ascertained and determined, that the same may be established and admitted to probate by proper sentence.

" That to this end, at the request of any party, a jury may be impanelled at the bar of this honorable court, to try an issue of ' *devisavit vel non*,' or any issue deemed proper by the court, for the purpose of ascertaining the true last will and testament of Charles E. Whitlock, deceased.

" That all proper process may issue, orders and decrees entered.

" That the clerk of this court may be required to keep safely in his custody the testamentary papers filed herewith as exhibits with this bill, and not to allow the same to be taken from this office.

" And your orator further prays for such other and further and general relief as the nature of the case may require, or to equity may seem meet.

" And your orator will ever pray, &c."

The Chancery Court being of opinion that said bill should be treated as a motion or petition in writing for the probate of testamentary papers, under sections 2538 to 2542, inclusive, of the Code of Virginia, so ordered. Guardians *ad litem* were appointed for the infants, and, neither party demanding a jury, the whole matter was heard and decided by the court, and the judgment entered to which this writ of error was awarded. The other facts are stated in the opinion of the court.

*Henry G. Cannon,* for the plaintiff in error.

*Leake & Carter, Cardwell & Cardwell, T. C. Gordon,* and *Coke & Pickrell,* for the defendants in error.

HARRISON, J., delivered the opinion of the court.

The deceased left five testamentary papers, all of which were, at the time of his death, in the hands of one of the persons named as his executors. These papers are:

1. A will, dated April 24, 1888, duly executed and attested according to law, which is a carefully and elaborately prepared paper, drawn by the testator's counsel, clearly, and

with great particularity, disposing of a large estate, valued at the time of his death at one million dollars.

2. A holograph will, dated October 12, 1894, which contains no revocatory or residuary clause, and disposes of only a very small part of the very large estate possessed by the testator.

3. A holograph codicil, executed at the same time with the will of October 12, 1894, and written on the same paper, which is styled Codicil No. 1.

4. A holograph codicil, dated October 25, 1894, detached, but with directions to be read as part of his will, styled Codicil No. 2.

5. A holograph codicil, detached and without date, but with directions to be read as part of his will, styled Codicil No. 3.

The Chancery Court of the city of Richmond, sitting as a court of probate, declared that the testamentary papers Nos. 1, 2, 3, and 4, as already described, taken together, constituted the true last will and testament of the testator, and ordered the same to be recorded as such. The paper No. 5, styled " Codicil No. 3," was rejected by the court, upon the ground that the testator was not competent to make a valid testament at the time said paper was shown to have been written. The plaintiff in error, who is one of the two executors named by the testator, in both the testamentary papers above referred to as No. 1 and No. 2, insists that the will of October 12, 1894, by implication as well as by words, entirely and completely revoked the will of April 24, 1888, and rendered it wholly inoperative, null and void.

The law applicable to this class of cases is well-expressed in Mr. Justice Williams's book on Executors (7th ed.), 162, where he says : " The mere fact of making a subsequent testamentary paper does not work a total revocation of a prior one, unless the latter expressly or in effect revokes the former,

or the two be incapable of standing together; for though it be a maxim, as Swineburne says, that no man can die with two testaments, yet any number of instruments, whatever be their relative date, or in whatever form they may be, so as they are all clearly testamentary, may be admitted to probate as together constituting the last will of the deceased. And if a subsequent testamentary paper be partly inconsistent with one of an earlier date, then such latter instrument will revoke the former as to those parts only which are inconsistent."

This court states the law in substantially the same way in *Schultz* v. *Schultz*, 10 Gratt. 358, 373, where it is said: "A man's last will must not of necessity be confined to one testamentary paper. It may consist of several different testamentary papers, of different dates, and executed and attested at different times. * * * Nor can it be material that a testamentary paper, found after a will had been admitted to probate, should purport to be a codicil to the latter, or that it should necessarily refer to it in express terms. If its provisions are but supplemental to those of the will admitted to probate, or if they do not necessarily conflict with them, or if, though to some extent the two are conflicting, yet if there are provisions in the will of prior date not in conflict nor inconsistent with those of the other, both are, I apprehend, to be regarded as parts and parcels of the last will of the testator, constituting but one whole, and that of later date (assuming that it contains no clause of express revocation of former will) only serving to revoke the former so far as the provisions of the two are conflicting and incompatible. And where the papers are of different dates and their provisions are conflicting, the courts will, if possible, adopt such a construction as will give effect to both, sacrificing the earlier so far only as it is clearly irreconcilable with the latter paper; supposing, of course, that such latter paper contains no express clause of revocation."

It is not necessary to state in detail the numerous provisions of the first will, or those of the second. As already seen, the will of April 24, 1888, is a long and carefully prepared paper, disposing of the testator's entire estate with clearness and particularity. The will of October 12, 1894, contains no clause revoking the former will, nor is there anything on the face of it to indicate that it was intended to be a substitute for the first, except to the extent that it is inconsistent with the first. The larger part of the first will, and some of its most important provisions, are unaffected by the last, and there is no difficulty in reading the two together as forming a complete testamentary disposition by the testator of his entire estate. The evidence shows that the testator was desirous of having a will disposing of his property, and yet if the paper of October 12, 1894, was held to alone constitute his last will and testament, he would have died intestate as to about nineteen-twentieths of his large estate—a result not favored by the law. The testator had every opportunity to destroy the first will, if he did not wish it to operate as a disposition of his estate, and yet, less than three weeks before his death, when possessed with the belief that he was in rapidly failing health, he placed it, together with his other testamentary papers, in the custody and keeping of one of his executors.

There is nothing in the scope or scheme of the second will to indicate that it was intended to stand alone and be in complete substitution for the first, nor are there any extraneous circumstances pointing to such a conclusion. Great stress is laid upon the use by the testator in the second will of the words, " My will is as follows." These words, standing alone, without any revocatory clause or other sufficient circumstances to justify a rejection of the first will, are not entitled to the weight attached to them.

In *Leslie* v. *Leslie*, Ir. R. 6 Eq. 332, it was held that the

*onus* is upon the party impugning the earlier will to show the intention of the testator to ·revoke it by the later; and, in deciding such a question, conjectures or slight probabilities will not be sufficient, and the words, " this is my last will," will have no weight whatever.

In the note to *Graham* v. *Burch*, 28 Am. State Reports 353, after stating the rule to be that unless the intention of the testator to revoke is clearly manifested, both wills must stand, except where they necessarily conflict, it is stated: " The· expression in a later will, ' this is my last will,' is not entitled to any weight. It amounts to no more than a state-ment of fact which is apparent from a mere inspection of the two wills, if they are truly dated, and which, whether they be dated or not, may be proved by any competent evidence. Therefore, when a testator leaves two or more wills, each of which may be given some effect without denying effect to all the provisions of the others, all are entitled to admission to probate as together constituting the last will of the decedent."

An instrument stating itself to be the testator's last will does not necessarily operate to revoke a prior will, either as regards real or personal estate. 1 Jarman on Wills (5th Am. ed.) 339; *Lemage* v. *Goodban*, Law Reports, 1 Prob. & Div. 57; *In re De La Sausaye*, Law Reports, 3 Prob. & Div. 42; *In re Petchell*, Law Reports, 3 Prob. & Div. 153.

I think it clear in the case in judgment that the will of October 12, 1894, does not revoke the will of April 24, 1888, except so far as it is plainly inconsistent with it, and that both were properly admitted to probate, with Codicil No. 1 and Codicil No. 2, as together constituting the true last will and testament of the deceased.

It is insisted that the probate court erred in refusing to allow testimony to be given showing certain gifts made by the testator in his lifetime, and after April 24, 1888, the date of the first will. This case was heard and determined by the

court without the intervention of a jury, and the testimony referred to is certified in Bill of Exceptions No. 1. It cannot affect the result of the issue under consideration one way or the other, and therefore its rejection by the court below, if error, was harmless, and cannot be availed of as ground for reversing its judgment.

The guardian *ad litem* of the infant children of deceased assigns as error so much of the court's order as refused probate to the paper writing styled " Codicil No. 3." By this codicil the testator revoked a bequest of $15,000.00, made by him in the will of October 12, 1894, to the wives and children of three of his nephews. At the time this paper was written deceased was in the city of Philadelphia, under the care and treatment of distinguished alienists. He was suffering from melancholia with delusions, and, although the owner of a princely estate, the unhappy thought possessed him that he had been reduced to poverty, and that his wife and children would be turned out as dependents upon the world. In this condition of mind he continued until death, by his own hand, ended his suffering, a few weeks after the paper styled " Codicil No. 3 " was executed. The evidence is satisfactory and conclusive that at the time this paper was written deceased was not competent to make a testamentary disposition of his property.

There is no error in the judgment of the probate court, and it is affirmed.

*Affirmed.*