April 20, 1953.

Record No. 4069.

Present, All the Justices.

The opinion states the case.

*Godwin & Godwin, Tiffany & Tiffany,* for appellants.

*Woodward & Ferguson,* for appellees.

SPRATLEY, J., delivered the opinion of the court.

This case comes to us upon an agreed statement of facts. Two questions are presented for our determination. The first is whether the lower court erred in refusing to probate a paper writing dated April 7, 1936, as a part of the will of the late J. N. Alexander, on the ground that it is wholly inconsistent with the provisions of another paper writing dated May 7, 1942, which had already been admitted to probate as the true last will and testament of the deceased. The second question is whether the court erred in its interpretation and construction of the paper writing of May 7, 1942.

J. N. Alexander, a resident of the City of Suffolk, Virginia, died April 18, 1943, leaving surviving him his wife, Virgie E. Alexander. Mrs. Alexander died May 5, 1950. No children were born of their marriage.

Appellants are the brothers and sisters of Mrs. Alexander and her sole heirs at law. Appellees are the nieces and nephews of J. N. Alexander and his sole heirs at law.

The stipulation of facts shows that testator and his wife had engaged in a number of real estate transactions. At the time of his death, J. N. Alexander was seized and possessed of certain real property, which may be briefly described as follows: Lot 15 in Block H and Lot 7 in Block K, respectively acquired in 1917 and 1919. At the same time, J. N. Alexander and Virgie E. Alexander were jointly seized and possessed of a parcel of land consisting of parts of Lots 11, 12 and 13 in Block H, acquired in 1924, and a lot on Grace Street, in the City of Suffolk, acquired on September 20, 1937. Another lot, 14 in Block H, had been conveyed to J. N. Alexander on January 5, 1916. On May 16, 1939, Alexander and his wife conveyed the same to Robert L. Modlin, and on February 4, 1941, Modlin reconveyed this lot to J. N. Alexander and Virgie E. Alexander. After the death of J. N. Alexander, his heirs at law conveyed "all of their right, title and interest in Lots 11, 12 and 13 in Block H" to Mrs. Alexander by deed, dated June 11, 1946. On November 4, 1946, Mrs. Alexander conveyed this property to R. E. Smith.

Thus, it will be seen that on April 7, 1936, the date of the first paper writing, J. N. Alexander was individually seized of three parcels of land, Lots 14 and 15 in Block H and Lot 7 in Block K. He and his wife then jointly owned the parcel consisting of

parts of Lots 11, 12 and 13 in Block H. On May 7, 1942, the date of the second paper writing, and on April 18, 1943, the date of his death, J. N. Alexander individually owned Lots 7 and 15, and he and his wife owned jointly two parcels, Lot 14 and the Grace Street lot.

J. N. Alexander made and executed at separate dates two wills. Both wills were wholly in the handwriting of the testator. That of April 7, 1936, hereinafter referred to as his first will, reads as follows:

"(This is my Will)

"To Whom it May Concern:

"In case of my death I want my wife, Virgie E. Alexander, to have all money lots of land and every thing that I have in my name as her own. That she shall have full possession of every thing at my death.

"This April 7th, 1936.

"Sign J. N. ALEXANDER."

The second, dated May 7, 1942, hereinafter referred to as his second will, reads as follows:

"May 7th, 1942

"In case of my death I want my wife, Virgie Alexander to have full right to *evrything* her lifetime to do as she thinks best for herself, so long as she lives At her death every that that Deeded to J. N. & Virgie Alexander be sold and ½ go to her brothers and sisters, the other half to my nieces nephews.

J. N. ALEXANDER."

On April 26, 1943, eight days after the death of Alexander, the second will was admitted to probate in the Clerk's Office of the Circuit Court of the City of Suffolk. No appeal was taken from the probate. On December 14, 1950, seven months after the death of Virgie E. Alexander, the first will was offered for probate in the Clerk's Office of the said Court, as a part of the last will and testament of the testator. Probate was refused by the clerk on the ground that the will dated May 7, 1942, had already been duly proved and probated. An appeal was taken to the Circuit Court of the City of Suffolk by appellants, the brothers and sisters of Mrs. Alexander. By consent of all parties "a jury was waived and all matters of law and fact on the issues, whether or not said paper writing, (the first will) in whole or in part, is the true last will and testament of J. N.

Alexander, deceased, and the determination of all rights there-
under were submitted to the Court for its determination and
judgment.''

On January 29, 1952, the trial court entered a final decree
refusing to admit the will of April 7, 1936, to probate. It held
that the second will was the true last will and testament of the
testator, under which ''Virgie E. Alexander took an estate for
life only in testator's property set forth in said statement of
facts, and that said will is wholly inconsistent with the provisions
of said writing executed on April 7, 1936, and was intended by
the testator to revoke the same.''

The decree further recited: ''The Court being further of the
opinion that the real estate devised to be sold under the last will
and testament of J. N. Alexander, deceased, dated May 7, 1942,
included only that real estate which was conveyed jointly to
J. N. Alexander and Virgie E. Alexander; that J. N. Alexander
died intestate as to all real estate conveyed solely to J. N.
Alexander and that the proceeds from the sale of said jointly
owned real estate should be divided equally between the heirs of
J. N. Alexander and Virgie E. Alexander, the Court doth so
adjudge and decree.''

Appellants contend that there was no revocation of the first
will in any manner prescribed by statute or otherwise; that the
two wills are only partly inconsistent; and that they should be
read together to prevent intestacy of any part of J. N. Alex-
ander's estate.

Appellees say that the decree of the trial court is inconsistent
on its face because of an ''inadvertent judicial error'' of the
court, in that, after holding that ''Virgie E. Alexander took an
estate for life only in testator's property set forth in the said
statement of facts,'' under the will of May 7, 1942, the court
proceeded further to hold that testator ''died intestate as to all
real estate conveyed solely to J. N. Alexander.'' They contend
that ''If J. N. Alexander devised all of his property to Virgie
Alexander for life, then he could not have died intestate as to
any part thereof.'' They further say that: ''The Court could
not possibly have found that J. N. Alexander died intestate as
to any part of his property; if so, the second will would not have
been wholly inconsistent with the terms of the first will, which
the Court found to be precisely the case.''

Appellees overlook the fact that testator made no disposition

of the remainder in his individually owned property. Whether the language of the court be "inadvertent" or not, we think it correctly construed the second will, standing alone, as bringing about a partial intestacy of the estate of J. N. Alexander. We agree with appellees, however, that under such a construction the second will is not wholly inconsistent with the first will, and the court fell into error in holding that it was.

We will first consider the question of revocation of wills. Code of Virginia, 1950, § 64-59 provides as follows:

"No will or codicil or any part thereof, shall be revoked, unless under the preceding section, or by a subsequent will or codicil, or by some writing declaring an intention to revoke the same, executed in the manner in which a will is required to be executed, or by the testator, or some person in his presence and by his direction, cutting, tearing, burning, obliterating, canceling or destroying the same, or the signature thereto, with the intent to revoke."

In *Moyers* v. *Gregory*, 175 Va. 230, 233, 7 S. E. 2d 881, we said:

"The statute, Code, section 5233 (now § 64-59) provides the manner by which wills may be revoked. This must be followed in order that the revocation may be valid just as the provisions of the statute, Code, section 5229 (now § 64-51), must be complied with in order that a will may be valid."

In *In Re Will of Bentley*, 175 Va. 456, 461, 9 S. E. 2d 308, Mr. Justice Eggleston, citing considerable authority, pointed out that "a man's last will may consist of different testamentary papers of different dates and that it is not indispensable that they should be probated at the same time." In accord therewith is *Gordon* v. *Whitlock*, 92 Va. 723, 727, 24 S. E. 342, where the following statement is quoted from *Schultz* v. *Schultz*, 10 Gratt. 358, 373: "A man's last will must not of necessity be confined to one testamentary paper. It may consist of several different testamentary papers, of different dates, and executed and attested at different times."

The general rule is summed up in 57 Am. Jur., Wills, § 466, page 326, where this is said:

"Ordinarily, a will does not revoke a former will unless it purports to do so, or makes a disposition of the testator's property so inconsistent with that made in the former will that the two instruments cannot stand together."

Further, we find in § 474, page 332:

"The general rule is that two or more instruments, each purporting to be a will, may be admitted to probate if they are not so inconsistent or repugnant that they cannot stand together as constituting the will of the testator, and the date of execution of the respective instruments is ascertainable. While a revocation by implication may be either complete or partial, the rule is to give effect to both the earlier and later wills so far as possible, and to hold that the earlier will was entirely revoked by a later inconsistent will only where it appears that the testator so intended or the wills are so plainly inconsistent as to be incapable of standing together."

Also, in § 476, page 333, the subject is continued:

"Generally speaking, the courts do not favor revocation by implication, and incline to such a construction as will give effect as far as possible to both instruments, rather than sacrifice the earlier will by declaring a total revocation by implication. Unless the two instruments are so inconsistent as to be incapable of standing together in any of their parts, the earlier one is deemed to be revoked only to the extent necessary to give the later one effect, and both instruments are to be admitted to probate as constituting together the last will and testament of the decedent.

"Where two instruments are probated jointly as constituting one will, they are construed so as to give effect as far as possible to both, sacrificing the earlier so far only as it is clearly irreconcilable with the later instrument. In general, a will does not entirely revoke a prior one if it bequeaths different property or fails to dispose of substantial interests of the testator which are covered by the prior instrument."

The subject is summed up with the following statement, 57 Am. Jur., Wills, § 543, page 375:

"The execution of the later will does not necessarily import the revocation of the earlier one, and it is incumbent upon the contestant asserting the revocation to prove the contents of the later will, and to show either that it contained express words of revocation or that there was an implied revocation because its provisions were so inconsistent with those of the former will that they could not exist together."

In 68 C. J., Wills, § 491, page 803, we find:

"The weight of authority supports the rule that a later will

is not necessarily a revocation of a prior will unless by it the prior will is in terms revoked and canceled, or by the later will a disposition is made of all the testator's property, or it is so inconsistent with the former will that the two cannot stand together." Among the cases cited in support of this statement is *Gordon* v. *Whitlock, supra.*

"When a later testamentary instrument does not revoke a former testamentary instrument they are to be construed together as one." 69 C. J., Wills, § 1163, page 120.

The will of May 7, 1942, contains no clause revoking the former will of April 7, 1936, expressly or by implication. Nor is there anything on the face of it to indicate that it was intended to stand alone, and be in complete substitution for the first. On the other hand, it shows that the welfare of his wife was the paramount desire of the testator. In the first sentence he gave to her the "full right to *evrything* her lifetime to do as she thinks best for herself, * * *." This language clearly shows that he intended to give her the absolute power of disposal of all the property he possessed, if she thought "best for herself." Then, in the second sentence, he made a limitation over only as to the property he jointly owned, omitting any such limitation as to his individually owned property in which his wife failed to exercise the power of disposal during her life. The two paper writings read together show that the testator was desirous of making a complete testamentary disposition of his entire property. The effect of the writing of May 7, 1942, read alone is to leave the testator intestate as to the remainder over in his individually owned estate,—a result not favored by the law. If he had not desired that the first will operate together with the later testamentary paper to dispose of his entire estate, he could have destroyed it.

In Virginia, we have consistently followed the rule that where a will has been executed, the reasonable and natural presumption is that the testator intended to dispose of his entire estate. *Gallagher, et al.* v. *Rowan's Adm'r., et al.*, 86 Va. 823, 827, 11 S. E. 121.

"When a man makes a will, the presumption, in the absence of evidence to the contrary, is that he intended thereby to dispose of his whole estate. Accordingly, where two modes of interpretation are possible, that is preferred which will prevent

either total or partial intestacy." *Honaker* v. *Starks,* 114 Va. 37, 39, 75 S. E. 741.

"We start with the legal presumption that the testator intended to dispose of his entire estate. There is a strong presumption against partial intestacy, * * * and the courts have for a long time inclined very decidedly against adopting any construction of wills which leaves the testator intestate as to a part of his estate, unless that result is absolutely unescapable." *Coffman's Adm'r.* v. *Coffman,* 131 Va. 456, 466, 109 S. E. 454.

"The only reason anyone can have for making a will is to change the devolution of his property from that prescribed by the statutes of descent and distributions. Hence there is a strong presumption that the testator intended to dispose of his entire estate, and the courts are decidedly adverse to adopting any construction of a will which leaves a testator intestate as to any portion of his estate, unless compelled to do so." *McCabe* v. *Cary's Ex'r.,* 135 Va. 428, 433, 116 S. E. 485. *M. E. Church* v. *Brotherton,* 178 Va. 155, 159, 16 S. E. 2d 363; *Neblett* v. *Smith,* 142 Va. 840, 847, 128 S. E. 247.

"Partial intestacy is looked upon with disfavor. Wills are written for the purpose of disposing of property." *Neblett* v. *Smith, supra,* at page 847.

"An intestacy is a dernier result in the construction of wills, and the abhorrence of the courts to intestacy under a will has been likened to the abhorrence of nature to a vacuum." 57 Am. Jur., § 1158, page 755.

In the absence of statute there is a presumption that one who makes a will intends "to dispose of his entire estate and not to die intestate as to the whole or any part thereof, and where a will is fairly open to more than one construction, a construction resulting in an intestacy as to any part of the estate will not be adopted if by any reasonable construction it can be avoided." 69 C. J., Wills, § 1147, page 91.

■ The construction of the first will gives us no trouble. By it testator devises and bequeaths to Mrs. Alexander a fee simple estate in all of his real property and an absolute estate in all his personalty. In ordinary and common acceptation, the word "everything" means: "All; all that pertains to the subject under consideration." Webster's New International Dictionary, Second Edition.

In the second will testator again uses the word "everything."

First, he gives his wife an estate for her life in all of his property, with full power of disposal without limitation in remainder over. In the next sentence, he provides that the remainder over in the property conveyed to him and his wife shall go at her death to their respectively named kindred. Nowhere does he mention the remainder over in his individually owned property. Obviously, he wanted his kindred to have only the remainder over in his share of his jointly owned property, and his wife's kindred to have the remainder in her share of such property.

The two wills deal with the same quantity of property, that is, all of the property of the testator. They are inconsistent only in the quality of the estate bequeathed and devised. The testator obviously knew that unless he disposed of his property by will, his heirs at law would succeed to a portion of it. That he originally desired to exclude them from any portion is manifest in the express provisions of the first will. The second instrument expressed his desire that they share therein only so far as his jointly owned property was concerned. The intention of the testator, we think, in view of the circumstances, is fairly plain and necessarily implies that he meant only to give his heirs at law an interest in his share of the jointly owned property. We find nothing inconsistent in law or fact with that intention, and it should be effectuated by construing the two wills as a whole.

There is no merit in the contention of appellants that the language of the second will: "At her death every *that* that Deeded to J. N. & Virgie Alexander be sold * * *," meant that all real estate which was conveyed by deed to J. N. and Virgie Alexander, jointly or severally, should be sold. It is generally recognized that the character "&" is equivalent to the word "and." The circumstances of the real estate transactions in which Alexander and his wife engaged indicate that he knew the difference between property individually owned and that jointly owned, and refute any logical reason for changing the word "and" to "or." To justify the construction claimed by appellants, the phrase would have to be changed to read, to "J. N. Alexander or Virgie Alexander." If testator had intended to direct that all real estate, individually or jointly, conveyed to him should be sold, he would have referred to such property as "all of the property deeded to me."

For the reasons stated, we conclude that the trial court erred

in refusing to admit the first will to probate as a part of testator's true last will and testament.

We find that the first will gave Mrs. Alexander a fee simple estate in all that the testator owned, and that the second will reduced that estate to one for life, but failed to dispose of the remainder over in his individually owned property, hence that remainder passed to her by virtue of the first will. Giving effect to the provisions of both instruments, Virgie E. Alexander took all of the individually owned estate of her husband, absolutely and in fee simple, together with an estate for her life in his share of the real property jointly owned, with the remainder in his share of the jointly owned property to his nieces and nephews. Under the facts of this case, the one-half share of Mrs. Alexander in the jointly owned real estate descended according to our statute of descent and distribution to her heirs at law. Her husband could not, of course, dispose of her estate by his will.

Since it appears that further proceedings are necessary to be taken in this cause, it is remanded to the trial court for such further action as may be necessary and proper, in accordance with the views herein expressed.

*Reversed and remanded.*