## CIRCUIT COURT OF AMHERST COUNTY

Joyce F. Eubank,
Executrix and Trustee

v.

Harry T. Eubank, III, et al.

### Case No. CH04010035

By Judge J. Michael Gamble

February 22, 2005

I am writing this letter to furnish you with a decision on the issues argued in this case. First, I find that the paper writing of Sallie M. Eubank dated September 10, 1997, is a valid holographic codicil to the Last Will and Testament of Sallie M. Eubank dated March 14, 1977. I further find that this holographic codicil was not revoked by the codicil of Sallie M. Eubank dated February 14, 2002. My reasons for these rulings are set forth below.

A "codicil" is an instrument "made subsequent to a will and modifying it in some respects, forming part of it and superseding it so far as consistent with it." *Fenton v. Davis*, 187 Va. 463, 471, 47 S.E.2d 372 (1948). The rule in the Commonwealth of Virginia is that any paper writing offered for probate as a will or codicil must have testamentary

intent. *Delly v. Seaboard Bank*, 202 Va. 764, 767, 120 S.E.2d 457 (1961). Further, the same formalities of execution required for wills must be complied with in order to execute a valid codicil to a will. *Poindexter v. Jones*, 200 Va. 372, 376, 106 S.E.2d 144 (1958).

Va. Code § 64.1-49 establishes the requirements for execution of a will in Virginia. The will must be in writing, signed by the testator, and witnessed by at least two competent witnesses unless made wholly in the handwriting of the testator. The paper writing dated September 10, 1997, meets the requirements for a holographic codicil to the will of Sallie Myers Eubank. It is wholly in the handwriting of the testatrix and signed by the testatrix.

Further, the paper writing has testamentary intent. The second paragraph of the paper writing begins with the phrase "[A]t my death I want my farm Walnut Hill 266A to go to my. . . ." Under Virginia law, testamentary intent must be found on the face of the will or codicil, and not from extrinsic evidence. *Quesenberry v. Funk*, 203 Va. 619, 624, 125 S.E.2d 869 (1962). The word "testamentary" means "applicable or related to death." *Poindexter v. Jones*, 200 Va. 372, 276 (1958). The words "[A]t my death" clearly indicate that the codicil is related to death.

Codicil No. 2, dated February 14, 2002, does not revoke the holographic codicil dated September 10, 1997. When a statute provides the manner by which wills may be revoked, the statute must be followed in order that the revocation may be valid. *Bradshaw v. Bangley*, 194 Va. 794, 798, 75 S.E.2d 609 (1953). Va. Code § 64.1-58.1 sets forth the manner by which a will or codicil may be revoked. It provides, in part:

> If a testator duly executes a will or codicil which does not expressly revoke a former will or codicil, but which expressly revokes a part thereof, or contains provisions inconsistent therewith, such former will or codicil is revoked and superseded to the extent of such express revocation or inconsistency if the later will or codicil becomes effectual upon the death of the testator.

Codicil No. 2 does not expressly use the term "revocation." It simply amends Article VIII of the Last Will and Testament dated March 14, 1977, and Codicil No. 1. It makes no mention of Codicil No. 2. However, it does specifically republish the Last Will and Testament dated March 14, 1977, and Codicil No. 1 dated March 7, 1994, subject to the modification set forth in Codicil No. 2. The amendments made by Codicil No. 2 simply

name a new executrix and trustee to serve under the will dated March 14, 1977.

Under Va. Code § 64.1-58.1, a former will or codicil is revoked or superseded only to the extent of an express revocation or inconsistency. In the instant case, there is no express revocation in Codicil No. 2. There is merely an inconsistency with the original will and Codicil No. 1 due to the naming of a new executrix and trustee. Accordingly, the codicil dated September 10, 1997, is not revoked because there is no express revocation and because it is not inconsistent with the terms of Codicil No. 2.

Courts do not favor revocation by implication and try to give an instruction that will reconcile, as far as possible, all instruments. *Bradshaw, supra*, at 799.

A last will and testament may consist of different testamentary papers executed on different dates. *In re Will of Bentley*, 175 Va. 456, 461 (1940); *Gordon v. Whitlock*, 92 Va. 723, 727, 24 S.E. 342 (1896).

A court must make every effort to reconcile the provisions of different instruments which constitute a will. *Whittle v. Roper*, 156 Va. 407, 414, 157 S.E. 827 (1928). Unless instruments are so inconsistent as to be incapable of reconciliation in any of their parts, the earlier will is deemed revoked only to the extent necessary to give the later one effect, and both instruments are to be admitted to probate as the last will and testament of the decedent. *Bradshaw, supra*, at 799.

In the instant case, the holographic codicil dated September 10, 1997, is not so inconsistent with either Codicil No. 2 or the original Will of Sallie Myers Eubank as to make these instruments incapable of standing together. Thus, the holographic codicil dated September 10, 1997, was not revoked by Codicil No. 2.

The next issue is whether the executor should be allowed to distribute the personal property in kind. The tangible personal property passes under Article IV, the residuary clause. This trust provides for the residuary estate to be divided into a trust for each living grandchild once the last grandchild reaches the age of 25 years. Further, at the death of any such grandchild, the trust will terminate and pass to the issue, *per stirpes*, of each such grandchild, or if such grandchild leaves no issue living, then to the remaining grandchildren or issue of any deceased grandchild. If the Court grants authority to distribute tangible personal property to the grandchildren outright, free of any trust, the provisions of the will will not be followed. Further, the issue of any grandchild will not receive their share as intended by the will. Accordingly, the Court cannot grant this request by the executor.

It is now necessary to construe the holographic codicil dated September 10, 1997, with the original will dated March 14, 1977. Accordingly, I am directing counsel to file a brief or memorandum by March 25, 2005, addressing the issues of construction of the holographic codicil. The analysis should include a discussion of issues of reconciliation of all of the testamentary instruments, the rule against perpetuities, and restraint on alienation. Each counsel is allowed to file a reply brief by April 7, 2005.

I am not directing that an order be prepared at this time. All of the rulings will be incorporated into one final order.

April 29, 2005

I am writing this letter to rule on the remaining issues in this case. The remaining issues involve the construction of the holographic codicil dated September 10, 1997.

There are several legal principles that the court must apply to construe this instrument. First, the court must make every effort to reconcile the provisions of different instruments that constitute a will. *Whittle v. Roper*, 156 Va. 407, 414, 157 S.E. 827 (1928). The court must try to give a construction that will reconcile all the instruments that are part of the will. *Bradshaw v. Bangley*, 194 Va. 794, 799, 75 S.E.2d 609 (1953). Further, the intent of the testatrix must be ascertained from the four corners of the will unless the words of a will are of a doubtful meaning and the uncertainty is not resolved by reading the will as a whole. More specifically, extrinsic evidence may be used to aid in the interpretation of a will if the language in the will is unclear and ambiguous. *Gillespie v. Davis*, 242 Va. 300, 303-04, 410 S.E.2d 613 (1991).

The paramount rule in will construction is to ascertain the intention of the testatrix. *Thomas v. Copenhaver*, 235 Va. 124, 128, 365 S.E.2d 760 (1988). Further, if the intention of the testatrix is ascertainable, her intention will prevail. *Trice v. Powell*, 168 Va. 397, 402, 191 S.E. 758 (1937).

Utilizing the above rules for the construction of a will, I find that Sallie M. Eubank intended to create a trust for the Eubank family when she signed her holographic codicil. Consideration of the original will dated March 14, 1977, and the handwritten codicil dated September 10, 1997, evince a clear intent to create a trust of the real property constituting the farm. It is further evident from reading these two documents that she

intended for the trust to hold the farm real estate for as long as possible. The "Eubank Family" described in her codicil refers to her son Harry T. Eubank, Jr., and her three grandchildren, Sallie Eubank Pearson, Harry T. Eubank, III, and John Page Eubank.

Her son, Harry T. Eubank, Jr., predeceased her. Again, utilizing the provisions of the original will and codicil, it is apparent that Sallie M. Eubank intended for her grandchildren to be the beneficiaries of the trust.

In accordance with the provisions of the codicil, each grandchild will benefit from one-third of the trust income. Accordingly, during the lifetime of each grandchild, each grandchild will receive one-third of the net annual income of the trust after the payment of the ordinary and necessary expenses by the trustee.

Upon the death of a grandchild, an undivided fee simple interest in the trust real estate will vest in the living issue, *per stirpes* of the deceased grandchild. If any grandchild dies without issue surviving, the share of such grandchild will be divided equally among any surviving grandchild, or any living issue, *per stirpes*, of any grandchild that predeceased the grandchild who has died, with one share passing to each grandchild and the share passing to the living issue, *per stirpes*, of any deceased grandchild. Further, if a grandchild has not died within ninety years of the death of Sallie M. Eubank, the living issue of any such grandchild living at a point ninety years subsequent to the death of Sallie M. Eubank will be fixed as the class who will receive the one-third fee simple interest, and the trust will immediately dissolve to vest that fee simple interest. The date that the class is fixed and trust dissolves is 11:59 p.m. on May 26, 2094.

The ruling that the living issue of a deceased grandchild to receive an undivided one-third fee simple interest in the real estate after the death of a grandchild, or before the expiration of ninety years, is not set forth in the holographic codicil of Sallie M. Eubank or the will dated March 14, 1977. However, the trust established by this codicil violates the common law rule against perpetuities and the statutory rule against perpetuities set forth in Va. Code § 55-12.1. The real estate held in the trust created under the codicil neither vests within twenty-one years after the death of an individual then alive ("life and lives in being plus twenty-one years"), nor vests within ninety years after its creation. Va. Code § 55-12.3, however, grants the authority to the court to reform the disposition of a will that violates the rule against perpetuities in the manner that most closely approximates the testatrix's plan of distribution and is within ninety years. The original will of Sallie M. Eubank provides for a distribution in fee

38

simple of one-third of the real estate to the living issue of a deceased grandchild, or if there are no living issue, to the surviving grandchildren or the living issue of any predeceased grandchild. Thus, it is apparent from reviewing the original will of Sallie M. Eubank that her intent was for the issue of her grandchildren to be ultimately vested with a fee simple ownership of the real estate. Further, because she specifically divided the interest of the grandchildren into one-third shares each, it is clear that she wanted a one-third fee simple interest to descend to each living issue, *per stirpes*.

The holographic codicil does not state whether the real estate is to be held in three separate trusts for each of the three grandchildren or one trust with income divided between the grandchildren. The original will of Sallie M. Eubank dated March 14, 1977, provided that the real estate would be divided into three trusts with each trust receiving an undivided one-third share. The codicil, however, appears to have a different approach.

The codicil states that "this land is to be kept as a whole. . . ." Further, she provides that the farm is "to be kept in trust in the Eubank Family. . . ." This indicates an intention to hold all of the property in one trust. Accordingly, the net income would be divided equally among the living grandchildren. If any grandchild dies, then the income would be divided equally among any remaining grandchildren.

In her codicil, Sallie M. Eubank provided that no part of the land is to be sold at any time unless "they agree for it to be sold to my nephews." This is construed to mean that all of the living grandchildren must agree if the beneficial interest in the trust is to be sold to the nephews. Because the grandchildren do not have a fee simple interest in the real estate constituting the corpus of the trust, the only interest that can be sold is the beneficial interest to the income. Accordingly, pursuant to the provisions of the codicil, the beneficial interest can only be sold to the nephews for a price not to exceed $225,000.00. Because Mrs. Eubank uses the plural of nephew, she is requiring that any sale of the beneficial interest be to all four nephews named in her codicil. Further, in accordance with the terms of the codicil, the sale of any "part" of the beneficial interest in the trust cannot exceed $225,000.00.

Neither the original will nor the codicil provide for the trustee to convey a divided share of the real estate in fee simple to the living issue of any deceased grandchild. Accordingly, at the death of a grandchild, the one-third share will pass as an undivided fee simple interest in the trust real estate to the living issue, *per stirpes*, of a deceased grandchild.

The income distributed from the trust to the beneficiaries is the net annual income from the trust. This is the income after the payment of all expenses for the trust real estate and administration of the trust.

The trustee is granted the powers granted to the trustee in the original will of Sallie M. Eubank dated March 14, 1977, plus the powers granted to a trustee pursuant to Va. Code § 64.1-57.

I find that the trust created by the codicil of Sallie M. Eubank is not an unreasonable restraint on alienation. This is because the trust does not convey fee simple title to the grandchildren, but devises the property in trust. As set forth in the earlier ruling in this letter, the trustee has a power of sale of the real estate under the power granted to the trustee. Further, at the death of each grandchild, the real estate will vest in fee simple to the issue of a deceased grandchild. The only limitation on conveyance is the provision that the beneficial interest in the trust be sold to the nephews for a price not to exceed $225,000.00. Because, however, this restraint does not affect the transfer of fee simple title to the real estate, it is not a restraint on alienation. A restraint on alienation is a condition which prohibits the alienation of a vested fee simple estate. *Carneal v. Kendig*, 196 Va. 605, 609, 85 S.E.2d 235 (1955). In this case, there is no prohibition on the alienation of a fee simple interest.

Last, I will reconsider the ruling on personal property. In this regard, I will allow the personal property to be governed by the trust set forth in this letter. As the trust terminates, the trustee will select the appropriate personal property to pass to the issue of a deceased grandchild or, under the powers granted to the trustee, sell such personal property and distribute the proceeds.